This suit was instituted by appellants, as relators, against respondents, as defendants, upon the official bond of Ruben R. Schade, as sheriff of Cape Girardeau County, and the other defendants as sureties on said bond. Relators dismissed the cause as to C. L. Grant because of his death, after which it was submitted to the judge of the Circuit Court of Cape Girardeau County as to all other defendants upon an agreed statement of facts, a jury having been waived by the parties. The court found the issues for defendants and entered judgment in their favor. Relators' motion for a new trial having been overruled, they duly appealed.
The petition of relators, which was filed August 9, 1941, alleged that they were, on February 11, 1941, and until February 25, 1941, and for a long time prior thereto, owners of a 1940 V-8 Ford truck, 158 inch wheel base, motor number 235463; that defendant Schade is and was at all times mentioned the duly elected, qualified and acting sheriff of Cape Girardeau County, Missouri; that Sheriff Schade, on November 23, 1940, gave an official bond for $10,000 signed by himself, as principal, and by the other defendants as sureties, conditioned upon the faithful performance of Schade's duties as sheriff; that the condition of the bond had been broken by Schade, who, in his official capacity as sheriff on February 11, 1941, levied upon and seized, under the authority of a transcript execution issued against relator R. P. Dietrich, a Ford truck which he advertised for sale and sold at public auction under execution on February 25, 1941, for $820, which was $665.03 in excess of the total amount due under said execution; that the amount of the judgment upon which said execution was issued was $106.12; that the interest thereon was $2.65, and costs and fees were $46.20, making the total amount legally collectible under said execution $154.97.
The petition of relators further alleged that, after such sale, the sheriff did not collect from the successful bidder the amount necessary to satisfy said execution and pay the surplus of $665.03 to relators but that he delivered the truck to the purchasers at said sale upon the payment of $47.60 costs and made a return showing said transcript execution partly satisfied; that on the day such transcript execution was returnable, relators, through their attorney, made demand on the sheriff for the surplus due them from the proceeds of the sale but the sheriff refused and still refuses to pay such surplus to relators. Relators prayed judgment for $10,000, the penalty of the bond, and for the issuance of an execution for $665.03 with interest thereon from April 28, 1941, and five per cent. per month as penalty in accordance with Section 1386, R.S.Mo. 1939, Mo.R.S.A. § 1386.
The amended answer of defendants admitted that the sheriff levied on and sold under execution the Ford truck mentioned but alleged that, at the time of the levy made by the sheriff at the direction of the McCracken Oil Company, judgment creditor of relators, said truck was subject to a chattel mortgage held by General Contract Purchase Corporation on which there was a balance due of $691.32; that, after the levy by the sheriff and before the sale, the sheriff was notified by the mortgagee that relators had defaulted in making payments due from them, and that said mortgagee expected to repossess the truck unless such payments were made; that, after receiving such notice, the sheriff gave statutory notice of the execution sale, reciting in said notice that the truck was subject to such mortgage, and that at the sale the sheriff announced the existence of the mortgage and the default in payments due; that he also then announced that the truck would have to bring in enough to pay off the mortgage and that it was being sold by him free and clear of the mortgage which was to be paid off out of the proceeds of the sale.
In their amended answer defendants further alleged that relator R. P. Dietrich was present at the execution sale, heard the announcement of the conditions of the sale, and made no protest against the proposal to pay off the mortgage out of the proceeds of the sale but acquiesced therein and bid on the property himself after the announcement at the sale of said condition that the truck was sold to the McCracken Oil Company, the judgment creditor, it being the highest and best bidder at the sale, for $820; that said sum was all that the truck was reasonably worth that the purchaser discharged the chattel mortgage debt and the note evidencing the debt was tendered to relator R. P. Dietrich that the balance of the sale price, after the mortgage was paid off, was used to pay the expenses of the sale and to apply on the judgment, leaving a balance due on the judgment of $30.69; that relators were not damaged by said sale at which their property was sold for its full value and the proceeds applied to said liens against said property, and are estopped to deny the right of the defendant sheriff to sell the truck in the manner in which it was sold because relator R. P. Dietrich was present at the sale, heard the announcement that the truck would be sold free of the mortgage and the proceeds applied to discharge the first chattel mortgage, and that he made no protest of any kind but acquiesced therein and bid on the property.
The agreed facts show that the Ford truck in question was purchased in June, 1940, by relator R. P. Dietrich, who gave a chattel mortgage thereon to Webb Motor Company of Charleston, Missouri; that relator Paul F. Dietrich, father of R. P. Dietrich, furnished money for the down payment; that said mortgage was duly assigned to General Contract Purchase Corporation at Cape Girardeau, Missouri, and at the time of the execution sale referred to herein there was due thereon a balance of $691.32. During the year 1940 the McCracken Oil Company obtained a judgment against R. P. Dietrich in a justice of the peace court in Cape Girardeau and a transcript thereof was duly filed in the office of the clerk of the Circuit Court of Cape Girardeau County. Thereafter an execution was issued on said judgment and was delivered to defendant Schade, sheriff, who thereupon seized the truck and advertised it for sale. The notice of the sale posted by the sheriff, after stating the authority under which the sale was to be held, describing the truck, naming the place and time of the sale, and stating that the sheriff would sell the described property "at public auction for cash to the highest bidder", concluded as follows: "A chattel mortgage on this vehicle was executed by R. P. Dietrich on June 24, 1940, and is on file under file No. 8253 in the office of Ellis W. Howlett, Circuit Clerk and ex-official Recorder of Mississippi County, Missouri, at Charleston in said state. Said mortgage is for the sum of $1036.98."
The above notice was dated February 13, 1941, and signed by the sheriff.
It further appears from the agreed statement of facts that the sale of the truck was held on February 25, 1941, in accordance with the notice and at the place advertised; that at the beginning of the sale it was announced by the sheriff that there was a balance of $691.32 due General Contract Purchase Corporation on the chattel mortgage mentioned, and that any bid accepted would be required to include a sufficient amount to retire that balance and pay off said chattel mortgage; that prior to the date of said sale said chattel mortgage was in default, and that a representative of the General Contract Purchase Corporation notified the sheriff that said mortgage was delinquent and that the truck would be repossessed by said corporation under its mortgage unless the balance due was taken care of; that a representative of said corporation was present at the time of the sale to see that the truck brought a sufficient amount to discharge in full said chattel mortgage and that said representative consented that the sheriff sell the truck, with the first proceeds to be used to discharge in full said chattel mortgage.
The agreed statement further sets forth that relator R. P. Dietrich was present at the time of the announcement by' the sheriff as to the method of holding the sale and the announcement that any bid must include a sufficient amount to pay' off the chattel mortgage, but made no protest to the sheriff and made no statement with reference to the method and manner of conducting said sale.
The parties were not able to agree with respect to a conversation between relator R. P. Dietrich and R. P. Smith, his attorney, and the sheriff just before the hour of the sale, and it was stipulated that, if R. P. Smith, one of relators' attorney's, and relator R. P. Dietrich were sworn they would testify that at 9 o'clock on the morning of the day of the sale they, together, talked with the sheriff in the common pleas court room; that they requested information as to the amount required to pay the judgment and costs and stop the sale, and were told by the sheriff that they would be required to pay not only the judgmnent and costs but also the amount of the chattel mortgage to stop the sale; that they told the sheriff that the chattel mortgage was into part of the execution in his hands and had nothing to do with the sale; that if the sale were held, the purchaser thereat would buy subject to said chattel mortgage, and that they were refusing to pay the amount of the chattel mortgage to him; that the sheriff informed them that he had not totalled the costs and could not give them the figure requested and that, being required to open the common pleas court immediately, he could not then figure the costs for them; that relators' attorney' then advised the sheriff and relator Dietrich in the presence of each other that relator Dietrich should attend the sale, if he did not pay the judgment before sale time, and bid thereat, and that all of the successful bid over and above the judgment, interest and costs would come back to him in law.
It was further stipulated by the parties that, if defendant Schade, the sheriff, were sworn, he would testify that he recalled having a conversation with relator R. P. Dietrich and his attorney at the time and place mentioned by' them but did not recall the statements above set forth having been made by relator and his attorney during such conversation. The stipulation further provided that the court should consider said statements of relator R. P. Dietrich and his attorney and the sheriff as though they had so testified.
On April 28, 1941, the sheriff made a return to the execution, which is set forth in the agreed statement of facts as is an amended return made on September 26, 1941, the second day' set for the trial of this cause. In both said returns the sheriff recited, among other things, that he sold the truck in question to R. H. Harper, representing McCracken Oil Company, he being the highest and best bidder, for the sum of $820; and in the later return recited that Harper satisfied the mortgage on the truck held by General Contract Purchase Corporation by assuming the balance due under said mortgage in the sum of $691.32. In each of the returns the sheriff recited that the execution was being returned satisfied only in part with $30.69 still due on the judgment.
The agreed statement of facts further shows that on April 28, 1941, attorney for relators made demand upon the sheriff for the sum of $665.03, representing the difference between the amount of the judgment of McCracken Oil Company against relator R. P. Dietrich with interest and lawful costs thereon, and the amount of the successful bid at the execution sale. It was also agreed that all of the acts of defendant Schade in connection with the transaction were done in his official capacity of sheriff of Cape Girardeau County, Missouri, and that the original note executed by R. P. Dietrich to Webb Motor Company secured by, a chattel mortgage on the truck, which note was later negotiated to General Contract Purchase Corporation, had been marked paid and tendered to R. P. Dietrich at the time of the submission of this cause, and that General Contract Purchase Corporation is not claiming any balance on said note from R. P. Dietrich. There is no evidence that relators, or either of theta, accepted such tender.
It will be observed that, under the agreed statement of facts, it is undisputed that the sheriff did not, in certain respects, proceed in accordance with the statutes relating to sales under executions. Section 1366, R.S.Mo. 1939, Mo.R.S.A. § 1366, provides that all property taken in execution by any officers shall be exposed to sale on the day for which it is advertised "publicly, by auction, for ready money, and the highest bidder shall be the purchaser." (Emphasis ours.) In this case it is conceded that the sheriff did not sell the truck in question "for ready money", as required by the above statute. Furthermore, in this respect the sale was not conducted in accordance with the notice the sheriff had posted wherein he had stated that he would "sell at public auction for cash." It is also shown that the sheriff did not conduct the sale in accordance with the notice he had given in that he sold the truck "free and clear" of the mortgage thereon whereas the notice he had given recited that the property levied upon by him was subject to a chattel mortgage which was described in his notice. It is further shown in the agreed statement of facts that the sheriff failed to proceed in accordance with Section 1367, R.S.Mo. 1939, Mo.R.S.A. § 1367, in that he did not resell the truck upon the failure of the purchaser to pay the amount of the bid. It is also shown by the agreed statement that the sheriff failed to follow the requirements of Section 1371, R.S.Mo. 1939, Mo. R.S.A. § 1371, which provides that, "when the purchaser of any goods or chattels shall pay the purchase money, the officer selling the same shall deliver him such property, and, if desired, shall execute an instrument of writing, testifying the sale and payment of the purchasemoney, and conveying to such purchaser all the right, title and interest which the debtor had in and to the property sold, on the day the execution was levied thereon." (Emphasis ours.)
In this case the sheriff did not require the purchaser to "pay the purchase money" but, instead, delivered the truck to the purchaser without such payment, and in addition thereto executed and delivered to the purchaser a bill of sale wherein he recited: "Now, therefore, in consideration of said sum of $820.00 to me paid as sheriff aforesaid by said McCracken Oil Company, the receipt whereof is hereby acknowledged
* * *." (Emphasis ours.) Under the agreed statement of facts, neither the sum of $820 nor any other sum of money was paid to the sheriff by the purchaser for the truck.
It further appears from the agreed statement of facts that the sheriff also disregarded Section 1386, R.S.Mo. 1939, Mo. R.S.A. § 1386, in that he failed to have the amount of the proceeds of the sale in court to pay it over to the parties entitled thereto as required by said statute. Section 1386, supra, provides: "If any officer shall sell any property under any execution, whether he received payment therefor or not, * * *and shall not have the amount of such sales or the money so made beforethe court, and pay over the same according to law, he shall be liable topay the whole amount of such sales or money by him made to the personentitled thereto, with lawful interest thereon, and damages in additionthereto, at the rate of five per cent per month, to be computed from the time when the same be demanded by the party entitled thereto, or his attorney or agent, after the execution is returnable, until the whole be paid, to be recovered by civil action against such officer and his sureties on his official bond * * *" (Emphasis ours.)
Relators contend that the trial court erred in rendering judgment in favor of defendants upon the agreed facts. They argue that the levy upon and sale of the truck by the sheriff were subject to the lien of the chattel mortgage; that the sheriff's sale under execution could convey no greater right or better title than the execution defendant had at the time of the levy, and that the purchaser at such sale took subject to all prior liens; that the sheriff was authorized to deliver the property sold and to execute a bill of sale therefor only when the purchase price, in ready money, was paid by the successful bidder; that the sheriff having failed to have the amount of the execution sale before the court to pay it over to the persons entitled thereto, he and his sureties are liable upon his official bond.
Defendants contend that, inasmuch as the proceeds of sale were used by the sheriff to discharge the indebtedness against the truck, which indebtedness was a personal obligation of relators, and inasmuch as the holder of the mortgage is making no claim against relators on account of any balance due on the mortgage, relators have no real cause of complaint. Defendants point out that after the mortgage debt was satisfied the balance of the proceeds of the sale was applied first to the costs, second to the judgment in favor of the judgment creditor against relators, and that by this method relators received the full benefit from all of the purchase price bid at the sale, and that relators were not damaged because the price bid at the sale, namely, $820, was the full value of the truck.
Defendants further contend that, inasmuch as there is no statute which directly prohibits a sheriff from selling under execution mortgaged property' as free and clear of the mortgage debt, the sheriff cannot be held liable to relators by reason of the method of conducting the sale mentioned herein. It is true there is no provision in the statutes which specifically', in so many' words, prohibits a sheriff from doing what the sheriff in this case did, but a mere reading of the plain and unequivocal language of the statutes which we have referred to shows clearly that the legislature did not leave and did not intend to leave the conduct of sales of property under execution to the discretion of such officer. On the contrary, the statutes clearly and expressly mark out the steps by which he must proceed. To insure certainty and uniformity in such procedure and to deter such officers from departing from the definite procedure marked out, particularly with respect to the handling of proceeds of such sales, the legislature prescribed a penalty in Section 1386, supra, for failure to have "the amount of such sales or the money so made before the court, and pay over the same according to law." The clear purpose of the legislature to enforce such penalty against aim officer who fails to perform such duties in the manner prescribed is shown in the statute itself because it is specifically made the duty' of every officer to whom any execution shall be delivered "issued upon any judgment recovered according to the provisions of this section, to execute the same within fifteen days after he shall be delivered to him and he shall be subject to the like penalties and liabilities for any default therein as on other executions." Section 1386, R.S.Mo. 1939, Mo.R.S.A. § 1386.
Defendants contend that relators are estoppeel to complain about the manner of the sale herein because one of the relators was present at the sale and took part in the bidding. The testimony of relator R. P. Dietrich and his attorney was to the effect that, on the morning of the sale and shortly' prior thereto, they had a conversation with the sheriff wherein the attorney advised both the sheriff and said relator of the proper proceeding under the law, and advised the relator, in the presence of the sheriff, to attend the sale and bid thereat. He also advised both relator and the sheriff that all of the successful bid over mind above the judgment would come back to relator by virtue of the law. The testimony of defendant sheriff does not amount to a denial of said testimony' by' the relator and his attorney. The sheriff contented himself with saying he recalled a conversation but did not recall such statements as having been made by relator and his attorney during the conversation. Therefore, in the absence of anything further on that question, we must take it as true that the sheriff was advised immediately before the sale as to the proper procedure. Relators were not required to refrain from bidding at the sale merely because the sheriff finally decided to disregard the law and conduct the sale in accordance with his own ideas of adjusting and settling the various rights and obligations of the parties interested, including the respective rights and obligations of the mortgagor and the holder of the mortgage. Neither relator nor his attorney misled the sheriff as to what relator intended to do at the sale. and it was the sheriff's duty to conduct it in accordance with the statutes which, in simple language, clearly charted the course which he should have pursued. The announcement made by the sheriff at the sale to the effect that the proceeds thereof would be first applied to the extinguishment of the mortgage lien was made without any authority and was contrary to the law. It is settled law that a purchaser at an execution sale acquires no greater right than the execution defendant had at the time of the levy'.
In the case of Mechanics' Bank v. Merchants' Bank, 45 Mo. 513, 100 Am.Dec.388., it was held that a sale of shares of stock of an incorporated company under execution did not vest the title thereto in the purchaser if the defendant in the execution had none; that the purchaser could not acquire any greater or other rights than the execution defendant had' and that inasmuch as a prior lien therein exceeded the value of the property, the purchaser at the sale acquired nothing by' his purchase.
The case of McClintock v. Central Bank, 120 Mo. 127, 24 S.W. 1052, was a contest between an execution purchaser and a prior lienor involving the purchase of stock at an execution sale under an attachment against the original pledgor. The court held in that case that the execution purchaser took the property subject to the prior lien.
In Hunter v. Hunter, 327 Mo. 817, 39 S.W.2d 359, 366, the court held that the interest acquired by a purchaser at an execution sale was subject to prior judgment liens, vendors' liens and trustee liens of which he had constructive notice.
As to defendants' contention of estoppel, we are of the opinion that there is no estoppel shown in this case against relators. They did not say or do anything that caused the sheriff to change his legal position. He took his own position despite their advice to him. They did not consent to the sheriff's manner of conducting the sale. On the contrary, they advised the sheriff that they would bid at the sale and would expect all money the sale might bring above the amount of the judgment, costs and expenses to be turned over to them. Having made their position known to the sheriff immediately before the sale, they cannot be said to have consented to the sale merely because one of the relators bid at the sale. There was no other course for relators then to pursue. The real effect of relator R. P. Dietrich's action in bidding at the sale was to bring a larger amount for the property', thereby minimizing any damages that might accrue as a result of the sheriff's unauthorized method of selling the property. It is true some of the statutes dealing with the duties of an officer in conducting
sales have, under particular circumstances, been held to be only directory, but Section 1386, supra, under which this suit was brought, has never been construed to be merely directory nor do we see how it could be held to be anything other than mandatory in view of the clear and specific penalties which are provided therein for failure of an officer who sells property under execution to have the amount of such sale before the court and pay it over according to the law to the persons entitled thereto.
The general rule for construing statutes with respect to whether they are mandatory or directory is to the effect that, when a statute provides what results shall follow a failure to comply with its terms, it is mandatory and must be obeyed, whereas, if a statute merely requires certain things to be done and nowhere prescribes the result that shall follow if such things are not done, the statute is merely directory. State ex inf. Attorney General ex rel. Lincoln v. Bird, 295 Mo. 344,244 S.W. 938; State ex rel. Ellis v. Brown, 326 Mo. 627, 33 S.W.2d 104; Ousley v. Powell, Mo. App., 12 S.W.2d 102. It seems to be obvious that the legislature deliberately and clearly' intended the statutes to which we have referred, particularly Section 1386, supra, to be mandatory because penalties are specifically prescribed for failure to proceed in accordance therewith.
We believe it is proper to say in this case that there is not the slightest intimation that the acts of the sheriff herein were in any manner concealed or tainted with fraud in any degree, nor is there any suggestion that he profited personally from any of the transactions. Nevertheless, under the agreed facts, he must be held to have subjected himself to the penalties prescribed by the law. It is clear that he failed to follow the statutes which should have been his guide, and instead gratuitously assumed to make himself the collector of the mortgage debt and compelled the payment thereof not only without any authority so to do but without concern for any defense against the mortgage claim which the mortgagor relator might have had. By such unauthorized method, the sheriff used the execution sale, which arose out of one debt, to compel the involuntary payment of another separate and distinct debt. Regardless of the fact that in this particular case the actual damage to relators may have been slight, we cannot give our approval to such procedure as the sheriff followed herein. To do so would hue contrary' to the plain provisions of the statutes and might lead to great confusion and uncertainty. with respect to titles to property resulting from sheriff's deeds on execution sales. It appears that the heavy penalties prescribed in Section 1386, supra, were deliberately intended by the legislature to prevent such situations.
The judgment is reversed and the cause remanded with directions to the circuit court to enter judgment in favor of relators for the penalty of the bond, and to issue execution thereon for $663.63 with interest at six per cent. per annum from April 28, 1941, and damages in addition thereto at the rate of five per cent. per month from said last-mentioned date until the whole be paid, in accordance with Section 1386, R.S.Mo. 1939, Mo.R.S.A. § 1386.
HUGHES, P. J., and ANDERSON T., concur.
 *Page 1004