STATE of Missouri ex rel. RUESELER MO-
TOR COMPANY, a corporation (Plain-
tiff), Appellant,

v.

Alvin F. KLAUS and Massachusetts Bond-
ing and Insurance Company, a corpora-
tion (Defendants), Respondents.

No. 29190.

St. Louis Court of Appeals.

Missouri.

July 19, 1955.

J. Grant Frye, Cape Girardeau, for appellant.

R. P. Smith, Strom & Spradling, Elmer A. Strom, Cape Girardeau, for respondents.

.HOUSER, Commissioner.

This is an action upon the official bond of the Sheriff of Cape Girardeau County. In State ex rel. Rueseler Motor Co. v. Klaus, Mo.App., 263 S.W.2d 71, we held that the petition in this case stated a claim upon which relief could be granted. Following our remand. defendants sheriff and surety filed separate answers. The trial on remand resulted in a jury verdict for defendants. Plaintiff has appealed from the judgment entered upon the verdict.

Reference is made to our former opinion for a resume of the allegations of the petition. The sheriff's answer alleged that he regularly levied upon and sold the right, title and interest of James Reed Pierce in the automobile, subject to relator's rights and claims arising out of the making of the repairs, and subject to relator's lien therefor; that when the sale was closed relator was advised both by the sheriff and by the attorney for the execution creditor that the sale was closed and that the automobile was left in relator's garage; that the sheriff did leave the automobile there and took no further action with respect to its possession.

The facts favorable to the prevailing parties are as follows: Relator-motor company was holding an automobile owned by one James Reed Pierce under a common law

possessory lien for automobile repairs made but not paid for. Acting under an execution issued by the Cape Girardeau Court of Common Pleas upon a judgment against Pierce the sheriff levied upon the automobile while it was parked in relator's garage. The sheriff posted notices of an execution sale to be conducted at the garage. The notices recited that he would sell "all of the right, title and interest" of the execution debtor in and to the automobile. One copy of the notice of sale was posted on relator's premises. At the designated time and place the sheriff conducted the sale. After the sheriff read the notice of sale Hon. R. P. Smith, attorney for the execution creditor, publicly announced that the sheriff would offer for sale only Pierce's interest in the automobile; that the motor company had two claims against the car, one for repairs and one for storage; that there was a dispute about the repair bill and that the purchaser would bid subject to the repair bill; that out of the proceeds of the sale the sheriff would pay that part of the storage bill which had accrued subsequent to the levy but that the repair bill would not be paid out of the proceeds of the sale. Al Rueseler, Jr., president of relator-motor company, was present at the time the sale commenced. The automobile was sold to the highest bidder. The amount of the bid was not paid by the purchaser on the day of sale, and no bill of sale was then given him. All parties to the sale except the purchaser left the scene of the sale on the second floor of the garage. The sheriff and Mr. Smith had a conversation with Al Rueseler, Jr. at the bottom of the steps after leaving the second floor. Mr. Rueseler was told that the car had been sold; that the purchaser knew what he was buying; that the sheriff could not hold the car, and that Rueseler had better hold the car, and not let it leave the garage; that the sheriff would pay the storage bill, but not the repair bill, out of the proceeds of the sale, as announced before the sale; that if Rueseler expected to collect the repair bill he had better keep the automobile from going out until that was settled. The sheriff then left the premises. Shortly after the sale the purchaser, with the assistance of some of relator's employees, pushed the automobile out of relator's premises, and took it away. Neither the sheriff nor his deputy authorized the purchaser to remove the automobile or gave him permission to do so. Some time later the purchaser paid the sheriff the amount of his bid and received a bill conveying "all of the right, title and interest" of the execution debtor in and to the automobile, together with the title.

■ Points I, II, III, IV, VII and VIII of Relator's "Points and Authorities" constitute statements of fact, argument, or abstract declarations of law, and are not points specifying the allegations of error within the requirement of 42 V.A.M.S. Supreme Court Rule No. 1.08(a) (3). They preserve nothing for appellate review. Lockhart v. Lockhart, Mo.App., 271 S.W.2d 208; Ambrose v. M.F.A. Co-Operative Ass'n of St. Elizabeth, Mo.Sup., 266 S.W.2d 647. Relator properly raises five points which we will consider in order.

Relator's first point is that the court erred in admitting evidence that the sheriff and the attorney for the execution creditor announced at the execution sale that the sheriff would pay the relator's storage bill, but not the repair bill, out of the proceeds of the sale and that he was selling the automobile subject to relator's claim for the repair bill. Relator urges that the duties of a sheriff at an execution sale are governed by statute and that the sheriff cannot, by way of announcements at the sale, conduct the sale in a different manner from that prescribed by the statute; that he could not bind relator by any statements he or the attorney may have made at the sale.

■ It has been decided that in the conduct of an execution sale it is the duty of the sheriff to follow the statutes and that he has no discretion in the matter. He cannot depart from the definite procedure marked out by the applicable mandatory statutes. He cannot conduct the sale in accordance with his own ideas of how the rights and obligations of the various parties interested should be adjusted and settled. State ex

rel. and to Use of Dietrich v. Schade, Mo. App., 167 S.W.2d 135. He has no right to try the right to property held by him for sale under an execution but must sell it in obedience to the command of the writ. Mitchell v. Gregg, 4 Mo. 37. The conduct of the sheriff in the instant case, however, did not violate these fundamental rules, and we find no error in the admission of this testimony. The announcement, acquiesced in by the sheriff, that the automobile was being sold subject to relator's claim for repairs and that the sheriff would not pay the repair bill out of the proceeds of the sale, and the sale with this notice of relator's lien, was within the province of the sheriff. There was no impropriety in giving notice of such an encumbrance, 33 C.J.S., Executions, § 201 d., p. 439, nor did this constitute an interference with orderly statutory procedure. The sheriff levied on the property while it was in the possession of relator and while relator was asserting its common law lien. The lienor continued in the possession of the property after levy and to and including the time of the execution sale. The interest of the owner of the property was the value of the automobile over and above the amount of relator's lien. This was a sale of the execution debtor's "right, title and interest" in the property. When Mr. Smith announced that a purchaser would buy subject to relator's lien he was telling the truth. See Hardwick v. Jones, 65 Mo. 54, loc. cit. 60. Prior liens are not affected by the execution sale of property. The purchaser takes the property subject to such liens, Hunter v. Hunter, 327 Mo. 817, 39 S.W.2d 359; 33 C.J.S., Executions, § 291, p. 577, acquiring only such rights as the execution debtor had at the time of the levy. State ex rel. and to Use of Dietrich v. Schade, supra; McClintock v. Central Bank, 120 Mo. 127, 24 S.W. 1052. The purchaser, accordingly, would acquire no right to possession because the execution debtor had no right to possession until he discharged relator's lien. 33 C.J.S., Executions, § 302, p. 596. The testimony relating to the pre-sale announcement supported the defense that the sheriff did not interfere with, but rather sought to protect, relator's possession of the automobile.

■ Relator's next point is that the court erred in admitting evidence of the conversation between the sheriff, the attorney for the execution creditor and relator's president, after the sale; that to give any effect to this conversation would raise doubts as to the rights of purchasers, provoke disputes, strife and litigation, and cast uncertainty over the finality and depreciate the value of execution sales. We find no error in the admission of this evidence. It was pertinent to the inquiry in that it supported the sheriff's defense that he did not interfere with relator's possession of the automobile, but on the contrary sought to help relator to retain it.

■ Relator urges that the acts and conduct of the sheriff, as a matter of law, constituted a delivery of the automobile to the purchaser, and that a verdict should have been directed for relator. Considering the evidence favorable to respondents we cannot say as a matter of law that the acts of the sheriff constituted a delivery, actual or constructive, of the automobile to the purchaser, or an implied authority to the purchaser to take the car from relator's premises. The pre-sale announcement, made with the approval of the sheriff, negatives the idea. The physical facts do not bear out the contention. At all times prior and subsequent to levy and sale the sheriff left the automobile in the actual possession of relator. While the sale was being conducted the automobile was parked in storage in such a way that several other cars would have to be moved before it could be moved from the second floor of relator's garage. There is no evidence that the sheriff caused the car to be placed in a position where it would be readily accessible for removal from the premises. He did not move the car from its place of storage, either before or after the sale, or authorize any other person to do so. The purchaser was not informed by the sheriff or his deputy directly or indirectly that he could take the car. There was no actual or manual delivery of the car to the purchaser by the sheriff or his deputy. The sheriff did not give the purchaser a bill of sale, certificate of purchase, or a key to the

car. In fact, there was no overt act on the part of the sheriff which would justify a conclusion on the part of the purchaser that he was entitled to take the car. After the sheriff concluded the sale and walked downstairs the purchaser pushed the automobile out of relator's garage, and made off with it, but this was not done with the knowledge or consent of the sheriff. The latter did not see the purchaser or anyone else push the car out of the garage, and neither he nor his deputy participated in its removal. It was incumbent on relator to maintain his possession. There was no duty on the sheriff to make relator secure in the enjoyment of his lien. On this evidence we cannot say as a matter of law that the sheriff delivered the car to the purchaser.

■ Relator's next point is that the court erred in amending plaintiff's Instruction No. 1, which directed a verdict for plaintiff upon a finding that the sheriff sold the automobile under execution, delivered it to the purchaser, did not pay relator's bill, "and the possession of the automobile was lost to Rueseler Motor Company." The court added the following phrase: "* * * unless you further find * * * that said Sheriff notified the prospective purchasers at the sale, and an officer of Rueseler Motor Co., that the sale was being made subject to the repair bill of Rueseler Motor Company and did not deliver said automobile to said purchaser." It is objected that there was no evidence that relator had any notice that the execution sale was to be made subject to its repair bill. This objection is without merit. There was substantial evidence that relator's president was present at the sale when public notice was given that the sale was subject to the repair bill.

■ Relator makes the point that the court erred in giving Instructions Nos. 3 and 4 authorizing a verdict for defendants upon a finding that the sheriff sold only Pierce's interest in the automobile, and no other, and that following the sale the sheriff left the automobile in the possession and on the premises of relator and neither took the automobile from relator's possession nor authorized or directed any other person to do so. We find no error in these instructions. There was substantial evidence to support them. The law relating to the interest sold was stated in our former opinion, 263 S.W.2d loc. cit. 73: "* * * if all the sheriff actually sold was Pierce's interest over and above the motor company's lien, then the motor company in that event would have sustained no damage * * *." The portions of the instructions relating to possession of the automobile clearly and properly submit the non-liability of the sheriff upon a finding that he did not interfere with relator's possession.

■ It is further urged that the court improperly limited the cross-examination of the witness R. P. Smith. Relator's counsel sought to show on cross-examination that Mr. Smith at all times during the execution sale, on the prior appeal, and on a motion to dismiss had been contending that the motor company had no common law lien for the reason that it had no memorandum in writing under Section 430.020, RSMo 1949, V.A.M.S. Relator wanted to draw this inference adverse to the good faith of respondents: that they were shifting their position, trying to make the facts fit the present defense in contrast with their prior defense that relator had no lien for lack of a written memorandum. While on the witness stand Mr. Smith admitted that previously he had been of the view that whether the motor company had a lien was a disputed matter of law, because of the lack of a written memorandum signed by Pierce. The proposed cross-examination related to the details concerning the position taken by Mr. Smith rather than the fact that he had entertained that view. Whether under the circumstances the court would permit cross-examination as to those details was a matter of discretion for the trial judge to determine. With the exercise of his discretion we will not interfere, there being nothing to indicate any abuse of discretion. Pierce v. New York Cent. R. Co., Mo.Sup., 257 S.W.2d 84; Lonnecker v. Borris, Mo.Sup., 245 S.W.2d 53.

Finally, error is asserted in the refusal of the court to grant relator's application for a change of venue from the inhabitants of the

county. The petition in this case was filed on February 13, 1953. The motion to dismiss the petition was sustained on April 18, 1953, on which date an appeal was taken. This court reversed the judgment of dismissal on December 15, 1953. The sheriff filed his answer on December 28, 1953. Our mandate was filed January 7, 1954. It was not until January 25, 1954, more than 11 months after the filing of the petition, that relator filed its application for change of venue. In it relator failed to allege when it obtained information of the existence of the prejudice and undue influence. On February 3, 1954 this application was overruled because not in proper form and not timely. On February 10, 1954, on relator's motion, the court set aside its order of February 3 and permitted the amendment of the application to allege that relator obtained information and knowledge of the prejudice and undue influence on January 23, 1954, and permitted the reverification of the application as amended. On the same day the application was again denied because not in proper form and not timely. Relator contends that there was no rush for a trial; that no one was injured by the delay involved in testing the basic rights and obligations of the parties during the pendency of the first appeal; that relator had every reason to believe that the liability of the sheriff was certain and that relator was not negligent in not finding out sooner than it filed its applications that the case was not to be settled.

■■■■■■ Relator's argument that the time consumed by the appeal is a legitimate excuse for the delay in presenting the application for a change of venue necessarily is based upon the assumption that relator had knowledge of the existence of the cause prior to the taking of the appeal. The suggestion that relator could postpone the pre-

sentation of the application for that length of time is totally without merit. George L. Cousins Contracting Co. v. Acer Realty Co., Mo.App., 110 S.W.2d 885. The first application was hopelessly late if relator had knowledge of the existence of the cause prior to the taking of the appeal. Relator's argument undertaking to justify the delay on this ground is utterly inconsistent with the amendment of February 10, 1954 alleging that relator first obtained knowledge of the existence of the cause on January 23, 1954. Wholly aside from the inconsistency, however, there was no abuse of discretion in denying the application as amended. The timeliness of an application for a change of venue is a question resting in the sound discretion of the trial court. George L. Cousins Contracting Co. v. Acer Realty Co., supra. In the Cousins case plaintiff filed a second application for a change of venue 13 days after it obtained knowledge of the existence on the ground alleged in its application. On appeal we upheld the action of the trial court in denying the application as against the contention that the trial court abused its discretion. In the instant case there was an interval of 18 days of unexcused delay, and the result must be the same.

No error appearing, the Commissioner recommends that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the Circuit Court of Cape Girardeau County is, accordingly, affirmed.

ANDERSON, P. J., MATTHES, J., and JAMES D. CLEMENS, Special Judge, concur.