**David DUVALL, Plaintiff/Appellant,**

**v.**

**Gary TAWNEY and Kevin Jones, Defendants/Respondents.**

**No. ED 93886.**

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 14, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 2010.

David Duvall, Acting pro se, Madison, MO, for Plaintiff/Appellant.

Eddie B. Collier II, St. Charles, MO, for Defendants/Respondents.

SHERRI B. SULLIVAN, P.J.

*Introduction*

David Duvall (Appellant) appeals from the trial court's summary judgment in favor of Monroe County Sheriff Gary Tawney (Tawney) and Deputy Sheriff Kevin Jones (Jones) (collectively Respondents). We reverse and remand.

*Factual and Procedural Background*

On March 10, 2006, Appellant obtained a default judgment against James Ray Maxey (Maxey) for $200,000. Appellant filed for a writ of execution naming Maxey as the judgment debtor and providing Maxey's home address and a description of his personal property, to-wit:

**Instructions for Service (to be completed by Applicant)**

Include applicable instructions such as, name and address of garnishee; description of property; location of bank account for a sequestration, include political subdivision, department, and name and title of disbursing officer:

"James Ray Maxey's property consists of the residential home, outbuildings, goods, automobiles, trailers, recreational vehicles, automotive tools, construction equipment, firearm weapons, chattels

and real estate located at 17852 Monroe Road, 146, Holiday, Missouri 65258."

The writ of execution was issued on March 13, 2006. Jones went to the Maxey residence to serve the writ. Maxey was not at the residence at the time, but his wife, LueAnne Maxey (Mrs. Maxey) accepted service on his behalf. Jones testified that he mistakenly thought the writ was a garnishment. Jones also stated that Mrs. Maxey declared all the property at the residence was marital property. Jones stated that he accepted Mrs. Maxey's declaration as the truth, believed he was not authorized to levy any property that someone says is marital, and left without executing the writ or levying any of the property listed in the writ. Jones also affied that he does not remember whether there were any motor vehicles or a boat present on the property. Jones made no further attempt to identify or levy upon Maxey's property within the 30–day execution period. Tawney never went to the property in execution of the writ or to levy any of the property listed in the writ.

Appellant sued Respondents under Section 513.340,[1] alleging that Respondents neglected or refused to execute the writ. The parties filed cross-motions for summary judgment, and the trial court initially denied both. Appellant filed another motion for partial summary judgment as to the presence of a boat, boat motor, and boat trailer on the property at the time Jones went to the property to execute the writ. The trial court heard that motion, denied it, and issued a judgment granting summary judgment in favor of Respondents, without analysis, but stating that "Tawney and Jones have shown by admissible evidence and reasonable inferences therefrom, not materially contradicted by evidence or inferences, that the petition has no merit against them and that there is no genuine issue of any material fact in dispute with respect [sic] the alleged injury or unjust loss claimed by [Appellant], and that [Respondents] are entitled to judgment as a matter of law." This appeal follows.

*Points on Appeal*

In his first point, Appellant contends that the trial court erred in granting Respondents' motion for summary judgment because Respondents did not file a motion for summary judgment and did not ask the trial court to enter summary judgment in their favor, and the trial court granted Respondents summary judgment based upon their responsive pleadings to Appellant's motion for partial summary judgment.

In his second point, Appellant claims that the trial court erred in granting summary judgment to Respondents and in overruling Appellant's motion to alter, vacate and/or amend the judgment based on Respondents' claim of entitlement to judicial immunity for their neglect or refusal to make any attempt, whatsoever, to execute a facially valid general writ of execution, because judicial immunity applies to those individuals who obey in good faith a judicial order, and in this case Respondents actually neglected or refused to obey the judicial order, i.e., the general writ of execution.

In his third point, Appellant asserts that the trial court erred in granting summary judgment in favor of Respondents on their claim that Appellant failed to show that the property at the Maxey residence was subject to levy pursuant to Missouri law because Appellant presented evidence that Maxey had property subject to levy under the writ of execution at the time Jones

---

1. All statutory references are to RSMo 2004, unless otherwise indicated.

served the writ and no attempt was made to levy any property.

### Standard of Review

Appellate review of summary judgment is *de novo,* viewing the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376, 382 (Mo.banc 1993). "The purpose of summary judgment is to resolve cases in which there is no 'genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" Rule 74.04(c)(6); *Grattan v. Union Elec. Co.,* 151 S.W.3d 59, 61 (Mo.banc 2004). A genuine dispute exists where the record contains competent evidence of plausible but contradictory accounts of essential facts. *ITT,* 854 S.W.2d at 382.

When the trial court does not issue findings of fact and conclusions of law, its judgment will be affirmed if it is correct under any reasonable theory pleaded. *Nahn v. Soffer,* 824 S.W.2d 442, 444 (Mo. App. E.D.1991).

### Discussion

#### Point I: Availability of Summary Judgment for Respondents

■ Appellant contends that the trial court improperly treated Respondents' responsive pleadings as a motion for summary judgment. Appellant is mistaken. The record reveals that Respondents filed their cross-motion for summary judgment on October 2, 2008, in response to Appellant's first motion for summary judgment. The trial court denied both motions and set the case for trial. Subsequently, upon Appellant's second motion for summary judgment, the trial court re-heard arguments from both parties and granted summary judgment in favor of Respondents. The trial court did not err in doing so because an order denying a motion for summary judgment is interlocutory, leaving the court the discretion to open, amend, reverse, reconsider, or vacate that order at any point before final judgment is entered. *Midwest Crane and Rigging, Inc. v. Custom Relocation's Inc.,* 250 S.W.3d 757, 761 (Mo.App. W.D.2008). Accordingly, Point I is denied.

#### Point II: Judicial Immunity

■ Appellant's claim against Respondents is pursuant to Section 513.340, which provides that a sheriff who neglects or refuses to execute a writ is liable for the amount thereof. Specifically, Section 513.340 states:

> If any officer to whom any execution shall be delivered shall refuse or neglect to execute or levy the same according to law, or shall take in execution any property or any property be delivered to him by any person against whom an execution is issued, and he shall neglect or refuse to make sale of the property so taken or delivered, according to law, or shall make a false return of such writ, then, in any of the cases aforesaid, *such officer shall be liable and bound to pay the whole amount of money in such writ specified,* or thereon endorsed and directed to be levied; and if such officer shall not, on the return of such writ, or at the time the same ought to be returned, have the money which he shall become liable to pay as aforesaid before the court, and pay the same according to the exigency of the writ, *any person aggrieved thereby* may have his action against such officer and his sureties upon his official bond, or *may have his remedy by civil action against such officer in default.*

[Emphasis added.]

Relying on the italicized statutory language, Appellant asserts that the statute

imposes upon the executing officer a non-discretionary mandate. Appellant's position is supported by *State ex rel. and to Use of Dietrich v. Schade*, 167 S.W.2d 135 (Mo.App.1943), where, interpreting a sheriff's duty to remit proceeds from the execution of a writ under Section 513.350, the court held that "when a statute provides what results shall follow a failure to comply with its terms, it is mandatory and must be obeyed." *Id.* at 141.

■ Respondents contend that absolute judicial immunity shields a sheriff who is following a protected judge's orders from civil liability and allegations of bad faith cannot abrogate said immunity. Conduct that is "intimately associated with the judicial phase" of the judicial process is protected by absolute judicial immunity. *White v. Camden County Sheriff's Dept.*, 106 S.W.3d 626, 633 (Mo.App.2003), citing *Burns v. Reed*, 500 U.S. 478, 492, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). This immunity extends to a sheriff who is following a protected judge's orders. *Id.*

■ However, common-law immunity is subject to legislative modification. *Edwards v. Gerstein*, 237 S.W.3d 580, 582 (Mo.banc 2007). *State ex rel. Golden v. Crawford*, 165 S.W.3d 147 (Mo.banc 2005), involved a Missouri statute that shielded emergency system workers (*e.g.*, 911 dispatchers) from liability except for willful and wanton misconduct or gross negligence. In other words, the statute allowed a cause of action against a worker in such circumstances. The Supreme Court of Missouri held that the statute superseded common law official immunity.

It is clear from the express language in this section that the legislature intended for this statutory immunity to supersede the common law official immunity doctrine for the enumerated individuals and agencies. Section 190.307 provides the shielded entities with a qualified immunity allowing civil liability only in instances where gross negligence can be established.

*Id.* at 149.

Likewise, *Edwards* involved a Missouri statute that shielded members of the Board of Chiropractic Examiners from liability except for gross negligence. The statute preserved a cause of action against the members for gross negligence in the performance of their duties. *Edwards*, 237 S.W.3d at 582. Despite this exception, the defendant board members argued that they enjoyed absolute quasi-judicial immunity. The Supreme Court of Missouri again disagreed, reasoning that "in order to give full effect to [its] plain language … the statute must be interpreted as superseding the Board's common law immunity if Board members engage in gross negligence…." *Id.*

■ The legislature clearly intended to provide a cause of action in Section 513.340 for negligently or purposefully failing to execute upon a writ of execution, and "any person aggrieved thereby may have his action against such officer and his sureties upon his official bond, or may have his remedy by civil action against such officer in default." See Section 513.340. When interpreting statutes, courts do not presume that the legislature has enacted a meaningless provision. *Edwards*, 237 S.W.3d at 581.

Respondents also argue that the common law doctrine of judicial immunity supersedes the statute by virtue of chronology. They believe that Missouri courts adopted the doctrine long after the General Assembly last revised the statute in 1939, in essence suggesting that the statute was judicially repealed and that, unlike *Golden* and *Edwards*, no legislative intent to waive immunity can be inferred. Respondents are simply mistaken. Mis-

souri's recognition of judicial immunity pre-dates the statute. *See Pike v. Megoun,* 44 Mo. 491 (Mo.1869). The General Assembly was free to narrow the waiver of immunity that exposes sheriffs to civil liability under Section 513.340 if it so wished.

Based on the foregoing, we find that Appellant is not precluded from asserting his cause of action under Section 513.340 by the doctrine of judicial immunity. Point II is therefore granted but not determinative, because we will affirm the trial court's judgment if correct on any theory pleaded. *Nahn,* 824 S.W.2d at 444. As such, we proceed to Appellant's third point.

### Point III: Availability of Property Subject to Levy

█ Finally, Appellant asserts that the trial court erred in granting summary judgment for Respondents because a genuine factual dispute exists as to whether there was property subject to levy located at the Maxey residence during the execution period. We agree. There are disputed issues of fact in the record as set forth by the affidavits, answers to interrogatories, statements of uncontroverted facts and responses to statements of uncontroverted facts, making the trial court's entry of summary judgment improper.

Appellant alleges that there was nonexempt[2] personal property located at the Maxey residence on March 15, 2006, when Jones went to the residence and served the writ to Mrs. Maxey. Specifically, Appellant claims that he observed a boat, boat motor, and boat trailer, all registered to Maxey alone, on the Maxey property before and after Jones went to the residence. Appellant asserts that Respondents made no attempt, either by negligence or intentionally, to levy upon these items or to identify or levy upon any other available property at the Maxey residence at any time during the execution period, March 15 to April 14, 2006.

Respondents counter that their inaction was lawful because Mrs. Maxey claimed joint ownership of all property located at the residence, and Appellant's instructions did not specify which personal property at Maxey's residence belonged solely to Maxey.

█ First, the duty of a sheriff to do an act sought by writ of attachment is ministerial according to its terms and does not allow him discretion. *State ex rel. Mather v. Carnes,* 551 S.W.2d 272, 285 (Mo.App. 1977). Therefore, it is not for a sheriff to determine whether or not to take property pursuant to a writ of execution based on a third party's claims that the property is marital. The cases cited by Respondents in support of their assertion that marital property is not subject to execution involve post-execution judicial proceedings where the *court* determines whether the property is jointly owned.

Second, Jones also stated that he mistakenly believed that the writ of execution was a garnishment, and therefore he was only required to leave the garnishment with Mrs. Maxey. If Jones' statement is believed, that raises the issue of why Mrs. Maxey asserted that all of the personal property at the residence was jointly owned by her and Maxey. Additionally, there remains an issue as to Respondents' initial sworn statements that there were no automobiles or boat or motor owned by

---

**2.** Sections 513.430 and 513.440 set out what items of property are exempt from writ of execution including household furnishings up to $3,000, wedding rings up to $1,500, tools of the trade up to $3,000, motor vehicles up to $3,000, health aids, social security benefits, unemployment compensation, public assistance benefits, veteran's benefits, disability benefits, alimony and child support up to $750, and retirement plans.

Maxey on the property on March 15, 2006. These affidavits were later "supplemented" by Respondents to state that the two officers were mistaken in their previous affidavits that there were no such items on Maxey's property on the day in question, but rather that Jones "could not recollect" whether there was a boat, motor, or autos on the property on March 15, 2006 and that Tawney had "no information or knowledge" of whether or not on that day there were any automobiles belonging to Maxey or a boat and motor on Maxey's property.

As set forth above, there are conflicting accounts of what items of property were present on Maxey's property the day the writ of execution was to be carried out. There are credibility determinations to be made in this case that should be made by the fact-finder, and not determined by summary judgment. The trial court is not allowed to make credibility determinations when considering summary judgment motions. *United Missouri Bank, N.A. v. City of Grandview*, 105 S.W.3d 890, 898 (Mo.App. W.D.2003). Rather, such matters are for determination following a complete trial. *Id.* Because the credibility of the evidence is disputed, a genuine issue of material fact on the issue of Respondents' negligence remains to be resolved. *Id.*

The sheriff must exercise reasonable diligence in searching for property subject to execution. *Taylor v. Wimer*, 30 Mo. 126 (Mo.1860). Liability for failing to levy depends on whether the positive or circumstantial evidence establishes that the sheriff knew of property owned by the debtor and subject to execution, or knowledge of facts that "should cause him to make exertions" to find the property. *Id.*

To preclude the entry of summary judgment, Appellant must set forth specific facts, by affidavits, depositions, or otherwise, showing that there is a genuine issue for trial. *ITT Commercial Fin. Corp. v.*

*Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo.banc 1993). A genuine issue exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *Id.* In the instant case, the record contains competent materials that evidence competing accounts of whether there was property at Maxey's home to levy upon and Jones negligently failed to do so under Section 513.340.

For the foregoing reasons, summary judgment was not appropriate in this case. Point III is granted.

### Conclusion

Because Respondents are not entitled to judgment as a matter of law, and because there are material facts still in dispute, the trial court incorrectly granted summary judgment. The order granting summary judgment is reversed, and this case is remanded for proceedings consistent with this opinion.

LAWRENCE E. MOONEY, J. and GARY M. GAERTNER, JR., J., concur.