**Larry Joe HART and L.J. Hart & Company, Plaintiffs–Respondents,**

v.

**John T. IMPEY, Defendant–Appellant.**

**No. SD 31633.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 1, 2012.

Robert T. Wilhelmus, Kansas City, MO, for Appellant.

Michael A. Clithero, St. Louis, MO, for Respondent.

JEFFREY W. BATES, J.

The issue presented by this appeal is whether the trial court had the authority to enter a judgment awarding attorney's fees to plaintiffs, pursuant to § 537.528, after they voluntarily dismissed their lawsuit without prejudice pursuant to Rule 67.02(a).[1] We conclude that the answer to that question is "no." Because the judgment was entered without authority, it is invalid and must be vacated. We remand the cause to the trial court with directions to vacate the judgment and all orders entered after the date of plaintiff's voluntary dismissal.

The underlying lawsuit arose out of a school bond issue in Houston, Missouri. In 2007, the Houston R–1 School District (School District) decided to tear down the Houston high school and build a new one (the Project). In July 2007, the School District entered into a written agreement with Larry Hart (Hart) and his company, L.J. Hart & Company (L.J. Hart). Pursuant to that agreement, L.J. Hart was to provide municipal bond underwriting services to the School District to issue new

---

1. All references to statutes are to RSMo Cum. Supp. (2008) unless otherwise specified. All references to rules are to Missouri Court Rules (2012).

general obligation bonds in the amount of $3,000,000. The bond issue was scheduled for a vote on the April 7, 2009 ballot.

John Impey (Impey), who was running for the Houston school board in that same election, opposed both the Project and the services to be provided by L.J. Hart. In early 2009, Impey sent letters to various individuals living in the school district and a letter to the editor that was published in the Springfield News–Leader.[2] Impey's letters stated that Hart had improperly influenced the School District to pursue the Project in order to promote Hart's own self-interest. In February 2009, Hart and L.J. Hart (hereinafter referred to collectively as Plaintiffs) filed a lawsuit against Impey. The petition requested that the trial court award Plaintiffs damages for defamation and tortious interference with business expectancy, as well as injunctive and declaratory relief. Impey filed an answer to the petition.

On March 2, 2009, Impey filed a special motion to dismiss Plaintiffs' petition pursuant to § 537.528.[3] After hearing arguments of counsel, the trial court denied the special motion to dismiss on March 19, 2009. At the April 7, 2009 election, the school bond issue did not receive enough votes to pass. Impey also lost the school board election.

On April 9, 2009, Plaintiffs filed a motion requesting that they be awarded their litigation costs and attorney's fees pursuant to § 537.528.2. This subsection of the statute authorized such an award if the trial court made a finding that Impey's special motion to dismiss was "frivolous or solely intended to cause unnecessary delay." *Id.* Following a hearing held in mid-April 2009, the court granted the motion and ordered Plaintiffs to submit an affidavit describing the attorney's fees and litigation costs they incurred in responding to the special motion to dismiss.

On August 12, 2011, the trial court entered an order (hereinafter, the Order) requiring Impey to pay Plaintiffs $7,677.20 for attorney's fees and $113.30 for litigation expenses. The Order did not address the merits of any of the substantive issues raised by Plaintiffs' underlying petition.

On September 6, 2011, Plaintiffs filed a document with the trial court stating that "[Plaintiffs], pursuant to Rule 67.02(a) of the Missouri Rules of Civil Procedure, dismiss without prejudice all claims against [Impey] set forth herein." On February 15, 2012, the trial court entered a judgment awarding Plaintiffs $7,790.50 for attorney's fees and litigation expenses. This appeal followed.[4]

Impey's two points on appeal challenge the trial court's decision to award attorney's fees and litigation expenses. The premise of each point is that the special motion to dismiss was neither frivolous nor solely intended to cause unnecessary delay. Plaintiffs argue, however, that we cannot address Impey's points on the merits because the trial court lacked the authority to enter the February 2012 judg-

---

2. Impey also sent a letter to the editor of the Houston Herald newspaper, but that letter was not published.

3. Section 537.528 is "commonly referred to as the SLAPP law. SLAPP is an acronym for strategic lawsuits against public participation, which are lawsuits brought for the purpose of retaliation for activity in opposition to a plaintiff's business interests." *Diehl v. Fred Weber,*

*Inc.,* 309 S.W.3d 309, 320 n. 3 (Mo.App. 2010).

4. After Impey's notice of appeal was filed, Plaintiffs filed a motion requesting damages for a frivolous appeal pursuant to Rule 84.19. Thereafter, Impey filed a motion for sanctions. Both motions, which were taken with the case, are denied.

ment. For the reasons that follow, we agree.

■■■ An appellate court must determine in every case whether it has the authority to address the merits of an appeal. *See In re Marriage of Herrman,* 321 S.W.3d 450, 451 (Mo.App.2010); *Carleton Properties, LLC v. Patterson,* 304 S.W.3d 278, 280 (Mo.App.2010). We cannot address the merits of an appeal if the underlying judgment was entered without authority. *Herrman,* 321 S.W.3d at 451. Our role is limited to correcting the actions taken by the trial court in excess of its authority. *Id.*

■■■ The Order was interlocutory because the only issue it decided was Plaintiffs' entitlement to attorney's fees and litigation expenses pursuant to § 537.528.2. *See Buemi v. Kerckhoff,* 359 S.W.3d 16, 20 (Mo. banc 2011) (a non-final interlocutory order does not resolve the entire controversy; it merely decides some point or matter between the commencement and the end of a suit). Thus, the trial court had the discretionary authority to open, amend, reverse, reconsider or vacate the interlocutory Order at any point before a final judgment was entered. *See Duvall v. Tawney,* 323 S.W.3d 804, 807 (Mo.App.

2010); *State ex rel. Fortner v. Rolf,* 183 S.W.3d 249, 255 (Mo.App.2005).

■■■ Plaintiffs' petition requested a trial by the court. Rule 67.02 authorizes a plaintiff in a court-tried case to voluntarily dismiss either the entire action, or one or more counts thereof, without prejudice prior to the introduction of evidence at trial. Rule 67.02(a)(2); *see Buemi,* 359 S.W.3d at 27 n. 3. In September 2011, Plaintiffs voluntarily dismissed all of their claims against Impey without prejudice pursuant to Rule 67.02. This voluntary dismissal disposed of the entire action as of the date the dismissal was filed. *See Applied Bank v. Wenzlick,* 344 S.W.3d 229, 230 (Mo.App. 2011). Once Plaintiffs voluntarily dismissed their entire action without prejudice, it is as if that suit had never been filed.[5] *See Oney v. Pattison,* 747 S.W.2d 137, 139 (Mo. banc 1988)[6]; *Brown v. MO Delta Medical Center,* 293 S.W.3d 28, 30–31 (Mo.App.2009); *Richter v. Union Pacific Ry. Co.,* 265 S.W.3d 294, 297 (Mo.App. 2008). *A fortiori,* the Order also must be treated as though it had never been entered.[7] *See Fortner,* 183 S.W.3d at 255 (holding that a prior order granting partial summary judgment to defendants had no remaining validity once plaintiffs voluntarily dismissed their case without prejudice);

5. One important exception to this general principle is that a trial court retains the authority to enter an administrative order relating to the assessment of costs pursuant to § 514.170 RSMo (2000) after a dismissal. *See Starling v. Union Pacific Ry. Co.,* 22 S.W.3d 213, 215–16 (Mo.App.2000).

6. *Oney* was overruled on other grounds by *State ex rel. DePaul Health Center v. Mummert,* 870 S.W.2d 820, 822 (Mo. banc 1994).

7. Relying on *City of Colton v. Singletary,* 206 Cal.App.4th 751, 142 Cal.Rptr.3d 74, 101–02 (2012), Plaintiffs' counsel asserted at oral argument that the Order remained viable after the voluntary dismissal. Plaintiffs' reliance on that case is misplaced. There, an order awarding attorney's fees pursuant to the Cali-

fornia anti-SLAPP statute was determined to be directly appealable under the "collateral order exception" to the final judgment rule governing appeals. *Id.* at 99–100. *Singletary* is distinguishable from the case at bar in two respects: (1) *Singletary* did not address the viability of such an order after a voluntary dismissal; and (2) in Missouri, an award of attorney's fees and litigation expenses pursuant to § 537.528.2 is an interlocutory order, rather than a final and appealable order. *See Cedar Green Land Acquisition, L.L.C. v. Baker,* 212 S.W.3d 225, 228 (Mo.App.2007) ("[t]he general rule requiring finality before an order or judgment is appealable applies to § 537.528").

*Lewis v. Department of Social Services,* 61 S.W.3d 248, 256–57 n. 4 (Mo.App.2001) (noting that a prior order by the judge did not constitute an adjudication on the merits because the action was later voluntarily dismissed by the plaintiff).

Once Plaintiffs voluntarily dismissed the entire action without prejudice, nothing remained before the trial court on which it could act in a judicial capacity. *Samland v. J. White Transp. Co., Inc.,* 675 S.W.2d 92, 97 (Mo.App.1984). "The circuit court may take no further steps as to the dismissed action, and any step attempted is viewed a nullity." *State ex rel. Rosen v. Smith,* 241 S.W.3d 431, 433 (Mo.App.2007). Therefore, the trial court lacked the authority to enter the February 2012 judgment. *See Brown,* 293 S.W.3d at 30; *State ex rel. Frets v. Moore,* 291 S.W.3d 805, 812 (Mo.App.2009); *Grady v. Amrep, Inc.,* 139 S.W.3d 585, 591 (Mo.App.2004).

While we cannot consider the merits of Impey's appeal, we nevertheless retain jurisdiction over this appeal. *See In re Estate of Shaw,* 256 S.W.3d 72, 77 (Mo. banc 2008). As our Supreme Court explained in *Shaw,* "[i]ndeed, were it not so, an appellate court would not have the ability to adjudicate whether a judgment is invalid because entered by a trial court when it did not have jurisdiction. The effect would be to leave the invalid judgment intact." *Id.; Applied Bank,* 344 S.W.3d at 231.

The cause is remanded to the trial court with directions to vacate the February 2012 judgment and all other orders entered after September 6, 2011. *See Shaw,* 256 S.W.3d at 77; *Herrman,* 321 S.W.3d at 451.

DANIEL E. SCOTT, P.J. and DON E. BURRELL, C.J., concur.