Madalyn Brewer SULLIVAN and Mary Jane
Brewer (Plaintiffs), Appellants,

v.

John W. WINER, Lucie Sonia Burch, and
Pete Burch (Defendants), Respondents.

No. 29862.

St. Louis Court of Appeals.

Missouri.

Dec. 3, 1957.

J. O. Swink, Farmington, for appellants.

W. Thomas Coghill, Jr., St. Louis, for respondent Winer.

Robert A. McIlrath, Flat River, for respondents Lucie Sonia Burch and Pete Burch.

ANDERSON, Judge.

This is an appeal by plaintiffs, Madalyn Brewer Sullivan and Mary Jane Brewer, from a judgment assessing damages against them as obligors in an injunction bond. Defendants are John W. Winer, Lucie Sonia Burch and Pete Burch.

It appears from the petition in the injunction suit that plaintiff Madalyn Brewer Sullivan is the only daughter of Josie Brewer Winer, deceased, and that plaintiff Mary Jane Brewer is the only child of Edwin Brewer, deceased, who was the only son of Josie Brewer Winer. John Winer is the widower of Josie Brewer Winer.

On January 31, 1956, plaintiffs brought a suit against defendant John Winer to set aside a deed executed by Josie Brewer Winer in favor of John Winer. The subject matter of said deed was certain farm land located in St. Francois County.

After the filing of said suit, and notice of lis pendens in the office of the Recorder of Deeds, defendant Winer executed a general warranty deed to said premises in favor of Lucie Sonia Burch.

It was then alleged that until March 24, 1956, plaintiffs had had the use and enjoyment of certain portions of the premises above described, including the residence, barns, barn lots and pasture, and that on the date last above mentioned defendants

"did proceed to oust plaintiffs' cattle and horses from the barns aforesaid, did remove and tear down portions of the outside fences of said properties and to nail shut the barn doors; to close and block the entranceway to the residence; that defendant Pete Burch was armed with a deadly weapon and threatened and proposed to tear down and destroy all buildings upon the premises aforesaid and continues to prevent and prohibit plaintiffs from the peaceable possession of the premises aforesaid."

The prayer of the petition was that defendants be enjoined from blocking and closing the entranceway to said residence, from interfering with plaintiffs' peaceful enjoyment of said premises, and from committing waste thereon.

On March 29, 1956, a temporary injunction was issued wherein defendants were enjoined from blocking said entranceway, interfering with plaintiffs' peaceful enjoyment of said premises, and from committing waste. At said time plaintiffs executed an injunction bond in the penal sum of $1,000, conditioned that they would abide the decision in said cause and pay all sums of money, damages and costs that should be adjudged against them if said injunction were dissolved.

On April 16, 1956, defendant Winer filed his separate motion to dissolve the temporary injunction and his answer to the petition. On the same day defendants Lucie Sonia Burch and Pete Burch filed their joint motion to dissolve said injunction, and at the same time filed their joint answer.

The cause was submitted to the court on April 16, 1956, and taken under advisement.

On May 12, 1956, the court entered an order dissolving the injunction as to defendant John Winer. Said order also provided "that the portion of said order allowing a temporary injunction against defendants Lucie Sonia Burch and Pete Burch whereby said defendants were enjoined and restrained from blocking and closing the entranceway to the residence located upon said premises therein described, and from interfering with plaintiffs' peaceable enjoyment of said premises, be and is in all respects dissolved and held for naught; that the portion of said order allowing temporary injunction, dated March 29, 1956, enjoining and restraining the defendants, Lucie Sonia Burch and Pete Burch, from committing waste upon the premises therein described shall be made permanent until further order of this court * * *."

Thereafter, plaintiffs appealed from said judgment. This appeal was later dismissed by this court for failure of appellants to perfect the appeal and to comply with the appellate rules.

The motion of John W. Winer for damages was filed May 12, 1956. It was alleged in said motion that said defendant had incurred expense in the sum of $300 for an attorney's fee in procuring a dissolution of the injunction. Judgment in said amount was prayed.

The motion for damages of defendants Lucie Sonia Burch and Pete Burch was filed May 29, 1956. In said motion said defendants sought recovery of $300 for attorney's fee and $1,500 for loss of an oat crop, loss of a potato crop and other truck produce, loss on a cattle purchase, money expended for the board of two horses, and one month's rent of the house on said premises, possession of which they were unable to give to their lessee.

The hearing on the motions was before the court.

At the hearing, Taylor Smith, Jr., testified that he was employed as attorney by John W. Winer. He then testified in detail as to the services performed by him in connection with the case and stated that he had spent approximately four full days on the matter. He gave it as his opinion that a reasonable fee for his services was $325 to $375. Raymond S. Roberts, an attorney, testified that, in his opinion, a reasonable fee for the services rendered by Mr. Smith would be between $300 and $400.

Pete Burch testified that after his wife bought the property he made plans to farm it. As a part of those plans he made an agreement with Earl Burch to put in 20 acres of oats. The arrangement was for Pete to furnish the fertilizer and seed, and Earl was to plant the oats, harvest the crop and take it to market. At the time the injunction was dissolved it was too late to plant the oats.

Pete Burch further testified that it would take 2½ to 3 bushels of seed per acre to plant the crop. The price of seed at that time was about $1.40 per bushel. The cost of fertilizer was $90 a ton, according to the testimony of Earl Burch. The latter also testified that he usually used 200 to 225 pounds of fertilizer per acre. When asked to give his opinion of the amount this 20 acres would have produced, the witness replied: "about 50 bushels to the acre." John Winer testified that the land should produce 40 to 50 bushels per acre. Pete Burch testified that the price of oats "at sale time" was "seventy cents ($.70) for Farmington." There was no evidence introduced of the expense of threshing the grain.

Pete Burch further testified that in March, 1956, he entered into an agreement to purchase twenty head of cattle. The purchase price was $2,000. He paid $500 down at the time the agreement was made and promised to pay the balance when the cattle were delivered. By reason of the injunction he could not accept delivery of the cattle. The deal was rescinded and Pete got back his $500. After the injunction was dissolved Pete was unable to buy cattle for that same price. He stated that he would have had to pay $25 per head more at that time. He did not make any purchase.

Pete had two horses on the farm—one was a stallion. Because of the injunction he was compelled to remove the horses from the farm. He took the horses to Founty Halbrook's place in Doe Run and left them there from March 28, 1956, to May 7, 1956. He stated that the reasonable value of the feed and care for said horses was $2 per day.

There was a house on the land in question. Prior to March 28, 1956, Pete agreed to rent this house to Earl Burch for $50 per month. There was no written lease. Pete testified: "There was no set date on the use of the house." He stated that Earl Burch was to move in "soon as I could get possession," and that he was unable to place anyone in there on account of the injunction.

At the trial, it was stipulated between the attorney for plaintiffs and counsel for defendants Lucie Sonia Burch and Pete Burch that if the said defendants were entitled to an allowance of an attorney's fee that a charge therefor in the sum of $300 would be reasonable.

The trial court found in favor of defendants. Damages were assessed in favor of defendant John W. Winer in the sum of $300. Defendants Lucie Sonia Burch and Pete Burch were allowed damages as follows: For loss on oats $150; attorney's fee $200; for loss on cattle $200; loss of house rent $50; rent for horses $84.

Appellants' first point is directed against the allowance made to defendant John W. Winer. In support of this contention it is urged that there was a failure on the part of Winer to show any unjust restriction or suspension of any legal right possessed by him which was the proximate result of the injunction.

The allowance to defendant Winer was for an attorney's fee for his counsel's efforts in procuring the dissolution of the injunction. Such fees are regarded as a proper subject of consideration in estimating damages where the injunction was improperly or wrongfully issued. High on Injunctions, 4th Edition, Vol. 2, § 1685.

The general rule is that the dissolution of an injunction amounts to a determination that the injunction was wrongfully obtained, and a right of action on the injunction bond immediately accrues

to the defendant. Pierce v. Campbell, 217 Mo.App. 179, 274 S.W. 875; High on Injunctions, 4th Edition, Vol. 2, § 1665, p. 1616. There are exceptions to this rule, as where the decree expressly finds that the temporary injunction was properly and providently issued, but because of events subsequent to its issuance the necessity for its continuance has been removed. But there is no such finding in the case at bar. The order dissolving the injunction makes the following finding:

"The plaintiffs did submit and present their evidence and testimony in support of the plaintiffs' petition, and, the Court, being fully informed in the premises, finds the issue for defendant, John W. Winer, and against the plaintiffs, and that the temporary injunction previously ordered and issued in this cause against the defendant John W. Winer, should be dissolved entirely * * *.

"Now Therefore, the Court doth order, adjudge and decree that the order allowing the temporary injunction hereinbefore entered in this proceeding on the 29th day of March, 1956, be and is in all respects dissolved and held for naught with reference to the defendant, John W. Winer."

This decree was never reversed, hence is conclusive that the injunction was wrongfully obtained. High on Injunctions, Vol. 2, § 1665; Smith v. Wells, 46 Miss. 64; Cummings, Kenney & Co. v. Mugge, 94 Ill. 186. And being wrongfully obtained, it did in contemplation of law impose an unjust restriction on defendant Winer. The allowance to Mr. Winer of $300 as and for an attorney's fee was proper.

Appellants next complain of the allowance of $150 in favor of the respondents Burch for the loss of the oat crop. It is urged that the finding could only rest on speculation and conjecture.

▮ A landowner who is wrongfully prevented from planting and growing a crop and is deprived of the use of his land throughout the growing season may recover as damages the rental value of the land during that period. Knight Bros. v. Chicago, Rock Island & P. R. Co., 122 Mo. App. 38, 98 S.W. 81; Boggs v. Missouri-Kansas & Texas Ry. Co., 336 Mo. 528, 80 S. W.2d 141. In fixing the rental value it is proper to consider the probable yield, the prevailing price of grain when harvested, the cost of seed, the cost of fertilizer, and the cost of threshing and marketing.

▮ However, there is another important consideration in fixing the damages recoverable. It is the duty of the landowner to minimize his damages as far as reasonably possible. Where he is prevented from planting the crop contemplated he should not allow his field to lie idle if it is possible and practical to plant another crop. If he does let his field lie fallow he should not be entitled to recover the full rental value. Knight Bros. v. Chicago, Rock Island & Pacific R. Co., supra.

▮▮ In the case at bar the injunction was lifted on May 7, 1956. At that time, according to the evidence, it was too late to plant the oat crop. But there were other crops which Pete could have planted. Of this, we take judicial notice. Pete made no effort to minimize his loss in this respect. He was therefore not entitled to recover as damages the full rental value of the premises. Such amount should be reduced by the amount of profit he could have realized on some other crop which he could have planted. International-Great Northern R. Co. v. Reagan, Tex.Civ.App., 36 S.W.2d 564. That amount, under the record, is conjectural. The item for loss of the oat crop is disallowed.

▮ Appellants also contend that the court erred in allowing respondents Burch the sum of $200 for an attorney's fee. The point made is that even though it was stipulated that a charge of $300 would be reasonable for the services of respondents' attorney in connection with the motion, there was no evidence supporting the court's finding that two-thirds of that amount was

a reasonable fee for the services rendered in connection with that portion of the injunction which was lifted.

It is not clear whether the parties intended to stipulate that $300 was a reasonable fee for all services rendered, or for only that portion for which a fee would be allowable. The latter would seem to be the more probable in view of the wording of the stipulation. The record shows that the stipulation was as follows: "We will stipulate and agree that if the defendant Burch is entitled to an allowance of an attorney's fee that a charge of three hundred dollars ($300.00) would be reasonable." However, it is not necessary for us to decide just what the parties intended. The trial judge was qualified to evaluate the worth of services without the aid of any stipulation or expert testimony, and it will be presumed, in the absence of evidence to the contrary, that he did not include any allowance for services for which said respondents were not entitled. Richardson Lubricating Co. v. Bedell, 209 Mo.App. 238, 237 S.W. 192. We hold the allowance was proper.

Objection is made to the allowance of $200 for loss on the cattle. The point is well taken. The deal for the cattle was rescinded and Pete got back his $500 down payment. There was no loss shown.

The allowance of $50 for loss of rent on the house was proper. The evidence showed an agreement to rent the house for $50 per month. Pete was not able to deliver possession on account of the injunction. The loss was clearly a proximate result of the injunction.

Finally, it is contended that the allowance for boarding the horses was not proper for the reason Pete did not qualify as an expert on the cost of maintaining horses. Pete was the owner of the horses and, being a farmer, no doubt had experience in feeding and maintaining them. In our judgment, he was qualified to testify as to the cost of maintaining the horses. However, Pete was only entitled to recover the difference between the cost of boarding the horses and the cost of maintaining them on the home place. There was no evidence of the cost of maintaining the horses at the home farm. Therefore, a finding of the amount due could only rest on speculation and conjecture. The evidence was insufficient to support the allowance.

Taken with the case were separate motions by respondents Winer and Burch to dismiss the appeal for failure of appellants to comply with 42 V.A.M.S. Supreme Court Rule 1.08. Said motions are overruled.

The judgment in favor of respondent Winer is affirmed. That part of the judgment in favor of respondents Burch allowing $200 for an attorney's fee and $50 for loss of rent on the house is affirmed; in all other respects, said judgment is reversed. The cause is remanded with directions to enter judgment accordingly—said judgment to bear interest from January 31, 1957, the date of the original judgment.

RUDDY, P. J., and MATTHES, J., concur.