EDWARD R. ARDINI, JR., JUDGE
John Impey filed an amended petition alleging malicious prosecution and abuse of process against Larry Joe Hart ("Hart") and L.J. Hart & Co. ("Hart Co.")(collectively "the Harts"), and Husch Blackwell, LLP ("Husch").[1] Husch moved for summary judgment. The motion was granted by the Circuit Court of Cole County, Missouri ("trial court") and Impey appeals. The judgment of the trial court is affirmed.
FACTUAL AND PROCEDURAL BACKGROUND[2]
The record is viewed in the light most favorable to Impey as "the party against whom the summary judgment was entered[,]" and he is accorded "the benefit of all reasonable inferences from the record." Diehl v. Fred Weber, Inc. , 309 S.W.3d 309, 317-18 (Mo. App. E.D. 2010) (citations omitted). The school board of Houston R-1 School District desired to finance the building of a new high school through bonds and contracted with Hart Co. to underwrite the proposed bond sale. The bond issue was placed on the April 2009 ballot. At the time, Hart was the President, Secretary, and only member of the Board of Directors of Hart Co. and advised the school board on the financing aspects of the project.
Impey, a candidate for Houston's school board at the same election, opposed the plan to finance the new high school through bonds. Although he was not in attendance at the meetings when Hart provided advice to the school board, Impey sent various letters, including one published in the Springfield News-Leader, regarding Hart and the project.
On February 13, 2009, Hart and Hart Co., represented by Husch, filed a Petition *348 against Impey alleging defamation, tortious interference with business expectancy, and seeking a declaratory judgment, injunctive relief "prohibiting Impey from again making [defamatory and false] statements and accusations[,]" and damages. They also filed a motion for a temporary restraining order ("TRO") and preliminary injunction. The petition and motion narrowly focused on three specific statements by Impey regarding Hart Co. and Hart.
Prior to the trial court conducting a hearing on the requested injunction, Impey filed a special motion to dismiss and/or for summary judgment pursuant to section 537.528,[3] Missouri's anti-SLAPP statute,[4] which was overruled by the trial court. The anti-SLAPP statute provides, in part, that "[i]f the court finds that a special motion to dismiss or motion for summary judgment is frivolous or solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney fees to the party prevailing on the motion." § 537.528.2. Pursuant to this section, Hart Co. and Hart requested that they be awarded their litigation costs and attorney's fees related to the special motion. The request was granted, and the trial court ordered that an affidavit describing such fees and costs incurred be submitted. The order awarding the fees and costs was entered on August 12, 2011.
Meanwhile, the election was held on April 7, 2009. The school bond issue did not pass, and Impey also was not elected to office. A hearing on the Harts' request for a preliminary injunction was held on April 16, 2009. The trial court, finding that Hart and Hart Co. would "suffer irreparable harm to their reputations and business expectancies" if the accusations were republished during the litigation and that "good cause" had been shown, entered a preliminary injunction prohibiting Impey "from making the following accusations:"
1. Hart advised the school board to circulate rumors that the historic [Houston High School] building was "unsafe" and "structurally unsound." When a report by Pinnacle engineering failed to confirm this rumor, Hart advised the board to shift its tactic to calling it "unusable" [sic] to condition the public to consider their living history a "waste of space."
2. In Pierce City, when a report by Rosenbury Architect concluded its original high school was structurally sound, and should be renovated rather than destroyed, Hart influenced the board to hire a new architect to give them a report more in tune with his own self-interest.
On July 5, 2011, Impey filed a special motion for summary judgment pursuant to Rule 74.04 and section 537.528. On August 8, 2011, Hart Co. and Hart requested additional time to respond to the motion, and voluntarily dismissed the cause of action less than a week later.
Impey filed suit against the Harts and Husch nearly two years later in August 2013, claiming that the original action between the parties amounted to malicious prosecution and abuse of process. Both defendant groups (Hart Co./Hart and Husch) moved to dismiss Impey's suit for failure to state a claim. The motions were considered together and granted, and the suit was dismissed without prejudice. On August 5, 2014, Impey filed an amended petition, and defendants renewed their motions. After a hearing, the trial court again dismissed Impey's suit for failure to state a claim, this time with prejudice. The Missouri *349 Court of Appeals, Southern District, reversed, holding that the amended petition sufficiently pleaded claims for malicious prosecution and abuse of process. Impey , 471 S.W.3d 776.
After being remanded, the case was transferred to Cole County. Summary judgment was entered against Impey in a judgment that did not specify the trial court's reasoning. Impey appeals.
DISCUSSION
On appeal, Impey alleges that the trial court erred in granting summary judgment because genuine issues of material fact exist regarding (1) whether Husch made an improper use of process in the first lawsuit, (2) whether Husch acted without probable cause, and (3) whether Husch acted with malice.
Standard of Review
Our review of the grant of summary judgment is de novo. Williams v. HSBC Bank USA, N.A. , 467 S.W.3d 836, 840 (Mo. App. S.D. 2015) (citation omitted). "Where the trial court does not specify its reasoning for granting a motion for summary judgment, we presume it acted according to grounds set forth in the motion." Romeo v. Jones , 86 S.W.3d 428, 431 (Mo. App. E.D. 2002) (citation omitted). However, we can affirm the judgment "by any appropriate theory supported by the record." Williams, 467 S.W.3d at 840 (citation omitted); Romeo , 86 S.W.3d at 431 (citation omitted).
"Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." Id. (citation omitted); see also Rule 74.04(c)(6). A summary judgment movant who is the defendant must demonstrate:
(1) facts negating any one of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to-and will not be able to-produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support his properly pleaded affirmative defense.
Clark v. Ruark , 529 S.W.3d 878, 881-82 (Mo. App. W.D. 2017) (citation omitted). "Once the [movant] has made such a showing, the burden shifts to the [non-moving party], who must demonstrate by affidavit, depositions, answers to interrogatories[,] or admissions on file that one or more of the material facts relied upon by the [moving] party is genuinely disputed." Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co. , 931 S.W.2d 166, 178 (Mo. App. W.D. 1996) (citation omitted).
Point I: Abuse of Process
Impey argues that Husch abused the judicial process by using it to accomplish an unlawful purpose, i.e. , to "silence" Impey before the election. "The essence of a claim for abuse of process is the use of process for some collateral purpose." Impey , 471 S.W.3d at 780 (citation omitted). A plaintiff who brings an abuse of process claim must establish "(1) an illegal, improper, perverted use of process, (2) done for an improper purpose, (3) resulting in damage." Id. (citation omitted). "The test is whether the process was used to accomplish some unlawful end or to compel the opposing party to do some collateral thing that he could not be compelled to do legally[,]" such as to extract money from another. Lambert v. Warner , 379 S.W.3d 849, 856 (Mo. App. E.D. 2012) (citation omitted); Wells v. Orthwein , 670 S.W.2d 529, 532 (Mo. App. E.D. 1984) (citation omitted). However, "if the action is confined to its regular and legitimate function in relation *350 to the cause of action stated in the complaint[,] there is no abuse even if the plaintiff had an ulterior motive in bringing the action[ ] or ... knowingly brought suit upon an unfounded claim." Williams , 467 S.W.3d at 843-44 (citations omitted).
In arguing that Husch used the judicial process to "silence" him before the election, Impey primarily relies on the following evidence and inferences therefrom:
(1) Husch's argument that they "filed the action to prevent Mr. Impey from making false statements about our client prior to the election[;]"[5]
(2) Email correspondence between Husch and Hart Co. after Impey filed a special motion for summary judgment stating that "[t]he cheapest option may very well be to simply dismiss the case with prejudice[;]" and
(3) The failure to pursue the lawsuit to its authorized conclusion by voluntarily dismissing the lawsuit after the election was over and Impey again filed a special motion for summary judgment.
Impey further argues that Husch should have known that there allegedly was no legal basis for the claims filed.
Impey's argument is without merit, as the uncontroverted facts establish that the original action between these parties was "confined to its regular and legitimate function[.]" Williams , 467 S.W.3d 836 at 843 (citations omitted).[6] The petition sought a declaratory judgment and requested injunctive relief to prohibit Impey from making specific and allegedly false and defamatory statements about Hart Co. and Hart. The Harts received the relief sought on their behalf by Husch when the trial court in the original action entered its preliminary injunction. Notably, the hearing on the preliminary injunction occurred after the election and did not "silence" Impey from discussing the bond issue but instead prohibited Impey from making two very specific statements that Husch, on behalf of Hart Co. and Hart, alleged to be false and defamatory.
Impey nevertheless argues that we must reach a different conclusion because the *351 lawsuit did not proceed to its authorized conclusion and was allegedly filed for an improper purpose. However, the two cases that Impey primarily relies on to support his argument, Romeo and Lambert , are distinguishable from the case before us.
In Romeo , the court concluded that summary judgment on the Appellants' abuse of process claim was precluded by evidence that the lawsuit "was to shut Appellants up[,]" a letter from the attorney stating that the lawsuit had "been successful in quieting Appellants[,]" and a letter from the attorney stating "that he had been able 'to orchestrate a continuance' " so that his client would "be through with his efforts to develop and sell so that there will be little to risk in dismissing the case." Romeo , 86 S.W.3d at 433.
Unlike Romeo , there is no evidence here that Husch, on behalf of Hart Co. and Hart, attempted to "silence" Impey before the election. In fact, Impey was not prohibited or "silenced" from discussing the bond issue either before or after the election. Husch has maintained that the purpose of the original lawsuit between the parties was to keep Impey from making very specific statements regarding Hart Co. and Hart that were alleged to be false and defamatory. We disagree with Impey's argument that "[t]his is simply a distinction without difference[,]" as a claim for defamation may be brought on such basis.[7]
In Lambert , the plaintiffs filed their action in the incorrect venue without disclosing prior litigation between the parties, dismissed their case when it was transferred to the correct venue, refiled their case again in the improper venue, and ultimately dismissed their case after conducting discovery in the correct venue, leading the appellate court to state:
A jury could reasonably conclude that had Appellants' purpose been to protect their property rights by forcing City to obtain a clarified demolition order, Appellants would have pursued the TRO actions to completion, and would not have dismissed the actions before adjudication on the merits. Appellants' short-lived lawsuits reasonably could support a conclusion that Appellants filed the TRO actions solely for the purpose of harassing or vexing City, which is not a proper purpose.
*352 379 S.W.3d at 857 (citation omitted). The court further noted that the jury could reasonably conclude that appellants "did so for the purpose of harassing or increasing City's cost of litigation." Id. Notably, other than discovery, no progress was made toward obtaining the desired relief, a clarified demolition order.
Here, however, there is no evidence that the failure to pursue the lawsuit to its authorized conclusion was an abuse of the judicial process. Unlike Romeo and Lambert , the lawsuit was not continued to cause delay or increase costs. Although the lawsuit lasted for approximately two years after the entry of the preliminary injunction, the only action taken by Husch, on behalf of the Harts, was related to the attorney's fees that were ordered when the trial court denied Impey's special motion to dismiss and/or for summary judgment.
We are also unpersuaded by Impey's argument that the legal axiom that "[n]o liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil the defendant's motive might be" mandates the opposite presumption, i.e. , that a defendant is liable for abusing the judicial process if the lawsuit is not pursued to its authorized conclusion. See Romeo , 86 S.W.3d at 433 (citation omitted); Wells , 670 S.W.2d at 533. "The proper use of judicial process is to resolve disputes." Lambert , 379 S.W.3d at 858. To hold that voluntarily dismissing a case that does not reach its authorized conclusion is an abuse of process, whether because the urgency has passed for the litigation, a settlement has been reached, or some other legitimate or proper reason, would be contrary to the aim of dispute resolution.[8]
Because Impey has not produced any evidence that the action was not confined to its regular and legitimate function, his first point is denied and the trial court's grant of summary judgment on his abuse of process claim is affirmed.
Points II and III: Malicious Prosecution
Impey also argues that summary judgment was improper on his claim for malicious prosecution. While an abuse of process claim focuses on the "misuse of process for an end other than that it was designed to accomplish[,]" malicious prosecution focuses on "the commencement of an action without justification[.]" Diehl , 309 S.W.3d at 320 (citations omitted). To prevail on his claim for malicious prosecution, Impey must prove:
(1) the commencement or prosecution of the proceedings against the present plaintiff; (2) its legal causation or instigation by the present defendant; (3) its termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage by reason thereof.
Impey , 471 S.W.3d at 778 (citation omitted). Because "actions for malicious prosecution are disfavored under Missouri law,"
*353 " 'strict and clear proof' of all [ ] elements" by Impey is required. Clark , 529 S.W.3d at 882 (citation and internal quotation marks omitted). In other words, Husch "could establish a right to judgment as a matter of law by showing that [Impey] would be unable to produce evidence sufficient to allow the trier of fact to find the existence of any one of the elements of malicious prosecution by strict and clear proof." Heberlie v. Harriman Oil , 497 S.W.3d 886, 890 (Mo. App. E.D. 2016) (citations omitted).
i. Probable Cause
Impey alleges in his second point that Husch failed to conclusively establish that he would be unable to show that Husch lacked probable cause when it commenced the original suit between the parties. " 'Probable cause to instigate a civil suit' means a reasonable belief in the facts alleged plus a reasonable belief that the claim may be valid under the applicable law." Diehl , 309 S.W.3d at 318 (citation omitted). Probable cause depends "upon the honest and reasonable belief of [the] one who instigated its prosecution" and is sufficiently established "[i]f it appears that a reasonably prudent person would have believed and acted under the circumstances as did the person who instigated the previous action[.]" Id. at 318-19 (citation omitted). "Probable cause does not depend upon what may have ultimately proved to be the actual state of facts embraced in the previous action or proceeding[.]" Id. at 318 (citation omitted).[9] However, slight evidence that probable cause was lacking is sufficient to create a fact issue requiring submission of the case. Id. at 319 (citations omitted).
Impey asserts the claims against him were not valid because his statements were protected by certain constitutional privileges or other defenses, in essence arguing that the statements were truthful opinions on a public matter, and that the Husch defendants should have determined this prior to filing the action on behalf of Hart Co. and Hart. However, probable cause does not require that a plaintiff initiating a suit would have prevailed on its claim but instead only requires that a reasonable person have an honest belief that pursing the claim is proper. Id. As stated supra , statements which accuse someone "of misconduct in his professional activities ... are defamatory per se." Pape , 918 S.W.2d at 380 (citations omitted). The petition in the original suit here narrowly focused on three such statements and was supported by exhibits, all of which were also referenced and incorporated into Husch's motion for summary judgment and statement of uncontroverted facts.[10] These facts are sufficient to show that Husch had a reasonable belief in the validity of its defamation claim and thus had probable cause to pursue the original suit.
That there was probable cause to initiate the action is further supported by the facts that a preliminary injunction in favor of *354 Hart Co. and Hart was entered after a contested hearing and the trial court denied Impey's special motion to dismiss and/or for summary judgment pursuant to the anti-SLAPP statute.
Although apparently not previously considered in Missouri, courts from other jurisdictions have held that a preliminary injunction issued after notice to the parties and a hearing is at least prima facie evidence of probable cause.[11] See, e.g. , Salvage Process Corp. v. Acme Tank Cleaning Process Corp. , 104 F.2d 105, 107 (2d Cir. 1939), cert. denied , 308 U.S. 599, 60 S.Ct. 131, 84 L.Ed. 501 (1939) ("The granting of a preliminary injunction upon notice to opposing parties, even though reversed on appeal, is at least [prima facie ] evidence of probable cause." (citations omitted) ); Burt v. Smith , 181 N.Y. 1, 73 N.E. 495, 496-97 (1905) (noting that an injunction order is "temporary and provisional ... to hold matters in statu[s] quo" and requires only "a [prima facie ] case," thus concluding that "it is only [prima facie ] evidence of probable cause"). Other courts have held that preliminary injunctions after a hearing and similar rulings are conclusive evidence of probable cause. See, e.g. , Paiva v. Nichols , 168 Cal.App.4th 1007, 85 Cal. Rptr. 3d 838, 850-51 (2008) (noting that a defendant can negate the absence of probable cause "by showing that an interim victory in the underlying case-such as the granting of a preliminary injunction in favor of the malicious prosecution defendant (the plaintiff in the prior case)-established probable cause" (citation omitted) ); H.P. Rieger , 97 A. at 361 ("The granting of the injunction [after the court is fully informed by proof taken and argument on both sides is] conclusive of probable cause, and hence prevents recovery for malicious prosecution[.]").
The rationale for this presumption is "that it requires the showing of a [prima facie ] case to obtain such injunction." Donnally v. Fairmont Brewing Co. , 87 W.Va. 494, 105 S.E. 778, 780 (1921) (citation omitted). In Missouri, a preliminary injunction requires, in part, that the movant show a likelihood of success on the merits. See Estate of Hutchison v. Massood , 494 S.W.3d 595, 608 (Mo. App. W.D. 2016) (citation omitted). We agree with the other courts that have considered this issue that the trial court's entry of a preliminary injunction against Impey after notice to the parties and a full hearing establishes that the plaintiffs in the original suit had a likelihood of success on the merits and thus their initiation of the action was supported by the necessary probable cause.
The trial court's denial of Impey's motion to dismiss or for summary judgment pursuant to an anti-SLAPP statute is also relevant to our probable cause analysis. We recognize that a trial court's denial of a motion to dismiss or for summary *355 judgment ordinarily is not evidence of probable cause because it merely indicates "that a claim has been properly stated and that the claim raises a genuine issue of fact requiring trial." Pic-Walsh Freight Co. v. Cooper , 618 S.W.2d 449, 453 (Mo. App. E.D. 1981). However, the anti-SLAPP statute provides for "expedited judicial consideration and prevention of unnecessary litigation expenses" for lawsuits alleged to be brought in retaliation of public participation. State ex rel. Diehl v. Kintz , 162 S.W.3d 152, 157 (Mo. App. E.D. 2005) (citing § 537.528.2); Hart , 382 S.W.3d at 920 n. 3 ("SLAPP is an acronym for strategic lawsuits against public participation, which are lawsuits brought for the purpose of retaliation for activity in opposition to a plaintiff's business interests." (citation omitted) ). The fact that the trial court denied Impey's special motion to dismiss and/or for summary judgment filed pursuant to this statute provides, at a minimum, additional evidence that the original suit was not a strategic lawsuit against Impey's public participation and should proceed. This ruling further supports the conclusion that Husch, on behalf of Hart Co. and Hart, had probable cause to initiate the original suit.
Impey nevertheless argues that these interlocutory orders merely decide some point or matter between the commencement and end of a suit which "the trial court ha[s] discretionary authority to open, amend, reverse, reconsider[,] or vacate ... at any point before a final judgment [is] entered" and thus cannot evidence probable cause. Id. at 921 (citations omitted).[12] However, the fact that a trial court possesses such discretion does not negate that the entry of a preliminary *356 injunction or denial of a special motion to dismiss pursuant to the anti-SLAPP statute evidence probable cause, just as a final judgment on the merits against the plaintiffs would not conclusively establish that they lacked probable cause to instigate the suit. Diehl , 309 S.W.3d at 318 (citation omitted).
Because the uncontroverted evidence establishes that Husch, on behalf of Hart Co. and Hart, had probable cause to initiate the action, Impey's second point is denied and the trial court's entry of summary judgment on his malicious prosecution claim is also affirmed.
ii. Malice
Impey contends in his third point that there remained a genuine issue of material fact regarding whether Husch acted with malice in instituting the suit. Because we have already found that Impey cannot show that Husch lacked probable cause in initiating the action and thus cannot prevail on his malicious prosecution claim, we need not address this point.
CONCLUSION
The trial court's grant of summary judgment is affirmed.
All concur.

Other defendants in this matter include Michael Clithero, Timothy McFarlin, Jason Smith, and Derek Ankrom, all of who were attorneys of Husch and at various points aided in the representation of Hart and Hart Co. in their action against Impey. These defendant-attorneys will be collectively referred to with the law firm as "Husch."

We summarize freely from and without further attribution to Hart v. Impey , 382 S.W.3d 918 (Mo. App. S.D. 2012) and Impey v. Hart , 471 S.W.3d 776 (Mo. App. S.D. 2015). Hart , 382 S.W.3d 918, held that the trial court lacked authority to enter and enforce its award to Hart Co. and Hart of attorney's fees and costs after they voluntarily dismissed the action. Impey , 471 S.W.3d 776, held that Impey's petition sufficiently pleaded claims for malicious prosecution and abuse of process to survive a motion to dismiss.

RSMo Supp. 2005.

SLAPP is an acronym for 'strategic lawsuits against public participation."

The Husch attorney argued before the Missouri Court of Appeals, Southern District, in Hart , 382 S.W.3d 918 :
Obviously there was an election in April of 2009. We filed the action to prevent Mr. Impey from making false statements about our client prior to the election ... [W]e later dismissed the case because we had no reason to really enforce the defamation action because ... our urgency had passed with the election ... [T]he purpose for filing the suit ... was to prevent false statements from being made against our client ... What we wanted was a preliminary injunction to stop it from happening.

Compare Williams , 467 S.W.3d at 843-44 (affirming summary judgment on abuse of process claim where nothing in the record indicated that defendant, who had filed unlawful detainer action, sought anything but possession of property), with Lambert , 379 S.W.3d at 858-59 (finding "substantial evidence that [a]ppellants improperly filed the St. Louis County TRO actions not for the purpose of litigating a legitimate dispute, but instead as a mechanism for impermissibly delaying [c]ity from demolishing the structures on their property and to harass [c]ity), Romeo , 86 S.W.3d at 433 (holding that a jury could infer from the evidence that the purpose of the lawsuit was to quiet appellants from making truthful statements regarding the company, which would be an illegal, improper, perverted use of process, in light of statements such as the lawsuit "was to shut [Appellants] up" and the lawsuit "has been successful in quieting [Appellants]"), and Diehl, 309 S.W.3d at 320-21 (finding that defendant presented no evidence establishing that anyone reasonably believed he was a terrorist or that his reputation was damaged when the first lawsuit was filed and thus that a disputed issue of material fact existed regarding the abuse of process claim).

We acknowledge that Impey also cites to several additional cases to argue that the original lawsuit between the parties had no merit. We briefly address this assertion. Whether a statement is capable of having a defamatory meaning is a question of law. Pape v. Reither , 918 S.W.2d 376, 379 (Mo. App. E.D. 1996) (citation omitted). "[T]o be defamatory, a statement must be clear as to the person addressed[ ] and must cast aspersions on that person's reputation so as 'to lower him in the estimation of the community or to deter third persons from associating with him.' " Id. at 380 (citations omitted). Statements which accuse someone "of misconduct in his professional activities ... are defamatory per se." Id. at 382 (citations omitted). If a statement is defamatory, then a court may then inquire "as to whether one or more privileges (e.g. , the privilege applicable to statements of opinion ...) shelters the defaming party from legal action." Id. at 380.
The statements at issue in the original lawsuit between the parties were clearly directed at Hart and alleged misconduct in his professional activities as the President, Secretary, and sole member of Hart Co. Given that the petition sufficiently pleaded defamation and these statements were in fact made by Impey, we find this sufficient to not find an abuse of process even if a privilege such as the "opinion privilege" may have applied, as the issue on appeal is not challenging whether an injunction, summary judgment, or dismissal should have been entered on the defamation and related claims but rather whether Husch abused the judicial process by pursuing a defamation claim on behalf of Hart and Hart. Co.

Further, our conclusion is not affected by the fact that the original lawsuit was dismissed because it was "[t]he cheapest option[.]" The allegedly defamatory statements were made by Impey out of his concerns regarding the preservation of the school building in Houston, accompanying school bond issue, and his own candidacy for the school board. The pursuit of the lawsuit to its authorized conclusion after Impey had agreed to no longer make the statements and the election had concluded would have resulted in the further expense of time and money for all. We do not wish to discourage plaintiffs from voluntarily dismissing a lawsuit because it is "[t]he cheapest option" out of fear that they will later be sued for abuse of process where the lawsuit has been confined to its regular and legitimate function but lost its significance.

Although a final judgment in the plaintiff's favor "is conclusive evidence of probable cause," Hobbs v. Consolidated Grain & Barge Co. , 517 S.W.3d 7, 8 (Mo. App. E.D. 2016) (citation omitted), a conclusion that there was probable cause to initiate the action may nevertheless be reached even if, for example, the previous suit terminated in favor of the defendant, see, e.g. , Heberlie , 497 S.W.3d at 891-92 (holding that supplier had probable cause to initiate fraud action against gas station operator even where supplier's claim was dismissed with prejudice and supplier may not have succeeded on the merits had the claim proceeded).

The statements alleged to be defamatory included those noted by the trial court in entering its preliminary injunction as well as Impey's statement that "[i]n effect, Hart encourages school boards to exceed the limits of their legal bonding capacity ..."

We note that where the proceedings differ from these facts, such as an injunction granted ex parte , then the issuing of the injunction would not constitute conclusive evidence of probable cause. See, e.g. , H.P. Rieger & Co. v. Knight , 128 Md. 189, 97 A. 358, 361 (1916) ("[I]f a preliminary injunction is granted ex parte on the allegations of the bill and the exhibits, without notice to or hearing of the other side, and afterwards the injunction is dissolved, we can see no reason why the granting of it under those circumstances should be held to be conclusive of probable cause."). Additionally, the presumption can be rebutted by evidence that, for example, a trial court later vacated or reversed a preliminary injunction because its entry was based on allegations that were later discovered to not be truthful. Cf. Lockett & Williams v. Gress Mfg. Co. , 8 Ga.App. 772, 70 S.E. 255, 257 (1911) (holding that court erred in awarding a nonsuit where petition for injunction and testimony offered in behalf of injunction was known to be false by the witness and petitioners and thus that injunction could not rebut a lack of probable cause).

Impey also alleges that the voluntary dismissal of the suit had two effects: (1) the interlocutory orders must be treated as though they were never entered and (2) the voluntary dismissal after the entry of the preliminary injunction was an admission that the quest for injunctive relief was wrongful. The cases Impey relies on, however, are distinguishable and not relevant to a determination of probable cause.
In Hart , the court held that the trial court lacked authority to award Hart Co. and Hart costs after their voluntary dismissal, that the order would be treated as though it had never been entered, and that the order could not be enforced. 382 S.W.3d at 921-22. Like a final judgment that is later reversed, the fact that the legal effect of an interlocutory order is null and void does not negate or change that the interlocutory order was at one time entered and can be some evidence of probable cause or lack thereof. Cf. Hobbs , 517 S.W.3d at 10-11 ("A judgment in favor of plaintiff in the original action ... is conclusive evidence of probable cause for bringing the action[,]" even if the judgment "is erroneous, ... reversed on appeal to a higher court, or set aside for irregularity ... Although the appellate reversal of the trial court's judgment in the underlying suit renders the legal effect of that judgment null and void, it does not negate or change the historical fact of its entry and existence." (citations omitted) ).
Impey nevertheless attempts to undercut the significance of the trial court's issuance of the preliminary injunction in the original case by noting that "the dismissal of an injunction without the defendant's connivance amounts to a determination that the injunction was wrongfully obtained." Newcourt Fin. USA, Inc. v. Lafayette Inv., Inc. , 983 S.W.2d 214, 216 (Mo. App. W.D. 1999) (citing Kelder v. Dale , 313 S.W.2d 59, 64 (Mo. App. 1958) and Sullivan v. Winer , 307 S.W.2d 704, 707-08 (Mo. App. 1957) ). However, Impey's reliance on cases such as Kelder and Sullivan is misplaced, as that rule has only been applied in the context of determining a party's right to recover damages on an injunction bond. See id. (citation omitted). By contrast, the issue before us is whether there existed probable cause to initiate the original suit between these parties. The fact that a disinterested judge, after conducting a contested hearing, independently found there was a likelihood that the plaintiffs would succeed on the merits and entered a preliminary injunction remains probative of whether the plaintiffs had probable cause to initiate the action.