

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| **GARY JOE LEMON,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| **v.** | ) | **WD85652** |
| | ) | |
| | ) | **OPINION FILED:** |
| **CHAD N. HOPKINS and STACIE A.** | ) | **September 26, 2023** |
| **HOPKINS,** | ) | |
| | ) | |
| **Respondents.** | ) | |

### Appeal from the Circuit Court of Cass County, Missouri
### The Honorable Patrick W. Campbell, Judge

### Before Division Three:  Alok Ahuja, Presiding Judge, and
### Karen King Mitchell and Edward R. Ardini, Jr., Judges

Gary Lemon appeals from the entry of summary judgment in favor of Chad and

Stacie Hopkins[1] on Lemon's claim of malicious prosecution arising from the Hopkinses'

2015 lawsuit to quiet title to land by adverse possession (the 2015 lawsuit).  Lemon raises

three points on appeal.  He argues the motion court erred in granting summary judgment

because (1) genuine issues of material fact exist as to whether the Hopkinses had

---

[1] We generally refer to Chad and Stacie Hopkins collectively as the Hopkinses, but, where necessary for clarity, we refer to them by their first names; no disrespect or undue familiarity is intended.

probable cause to initiate the 2015 lawsuit, (2) an affidavit offered by the Hopkinses and relied on by the court in granting summary judgment was inadmissible, and (3) genuine issues of material fact exist as to whether the 2015 lawsuit was motivated by malice. Because there are genuine issues of material fact as to whether the Hopkinses had probable cause to initiate the 2015 lawsuit and whether they acted with malice, summary judgment was inappropriate. We reverse and remand.

## Background[2]

On July 21, 2005, the Hopkinses acquired approximately forty acres of land in Cass County, Missouri, from Stacie's grandparents (Grandparents), who had owned the property for decades. On May 9, 2007, Lemon acquired roughly forty acres of land, which partially adjoined the Hopkinses' property. In the summer of 2015, a dispute arose between the parties regarding ownership of two tracts of Lemon's property—the Northeast Access Triangle (used by the Hopkinses to access twenty acres of their property on which they raise cattle) and the Southeast Driveway Strip (used by the Hopkinses to access their residence) (collectively, the disputed property).

On July 23, 2015, the Hopkinses signed an Access License Agreement (ALA) granting them a temporary, nonexclusive, nontransferrable license to use the disputed property for ingress and egress, beginning July 27, 2015, and ending December 31,

---

[2] "We review 'the record in the light most favorable to the party against whom judgment was entered, and give[ ] the non-movant the benefit of all reasonable inferences from the record.'" *Vescovo v. Kingsland*, 628 S.W.3d 645, 653 (Mo. App. W.D. 2020) (quoting *Truman Med. Ctr., Inc. v. Progressive Cas. Ins. Co.*, 597 S.W.3d 362, 365-66 (Mo. App. W.D. 2020)).

2015.[3]  Less than a month later, on August 18, 2015, Lemon's counsel informed the Hopkinses that their access to the Southeast Driveway Strip would terminate October 31, 2015.  Counsel for the Hopkinses responded by proposing that Lemon grant them an easement over the disputed property, but the parties were unable to reach an agreement.

On September 29, 2015, the Hopkinses filed the 2015 lawsuit against Lemon and his then wife;[4] the lawsuit included claims for adverse possession (Count I), trespass (Count II), and a temporary injunction (Count III).  In support of their adverse possession claim, the Hopkinses alleged, among other things, that they and their predecessors in interest had used the disputed property "for ingress, egress, livestock, travel and other purposes for in excess of 40 years."[5]  The Lemons filed an answer and counterclaims for declaratory judgment (Count I), quiet title (Count II), statutory trespass (Count III), and common law trespass (Count IV).

On July 14, 2016, the Hopkinses dismissed their claims in the 2015 lawsuit without prejudice.  The parties subsequently moved for entry of a consent judgment quieting title to the disputed property in the Lemons' favor and, on September 1, 2017, the court entered a consent judgment resolving Counts I (declaratory judgment) and II

---

[3] The Access License Agreement (ALA) stated that the parties "do mutually acknowledge that nothing contained in the [ALA] shall be deemed to vest any ownership rights in the [disputed property] in the [Hopkinses], nor shall it create any permanent easement rights to run with [the disputed property]."

[4] Lemon's then wife was a party to the 2015 lawsuit, but she has not been a party to any subsequent litigation to determine ownership of the disputed property.

[5] The Hopkinses also alleged that they and their predecessors in interest "possessed and occupied [the disputed property] for in excess of 40 years and have held and occupied the same openly, notoriously, actually, exclusively, continuously, and adversely to any claim of any other party, including [the Lemons]."

(quiet title) of the Lemons' counterclaims. The consent judgment stated, "The Hopkins[es]' claim for adverse possession is barred because [of] the Hopkins[es]' and their predecessors-in-interest's permissive use of the [d]isputed [p]roperty granted and given by the Lemons and their predecessors-in-interest."[6]

On June 24, 2020, Lemon sued the Hopkinses for malicious prosecution and civil conspiracy. After more than a year and a half of discovery, the Hopkinses moved for summary judgment on both claims. In support of their motion, the Hopkinses offered an affidavit from counsel who represented them in the 2015 lawsuit (counsel's affidavit). Among other things, counsel's affidavit attested to the affiant's belief that, when the 2015 lawsuit was filed, (1) the Hopkinses had acquired the disputed property by adverse possession, (2) they had probable cause to file the 2015 lawsuit, and (3) they did so without malice.

The Hopkinses also offered testimony as to their belief that they had acquired the disputed property through adverse possession and could use that property for ingress and egress. Their belief was based, in part, on Grandparents' decades-long use of the disputed property for similar purposes. With respect to Grandparents' use of the disputed property, the Hopkinses offered Stacie's affidavit, which stated, in part:

> My grandfather, Donald Shipley, who owned and was therefore the predecessor in interest to the property owned by m[e] and my husband which is part of the property discussed in this litigation, used the driveway and that corner of Plaintiff's property (the [d]isputed [p]roperty) for decades prior to 2005 in the same manner that my husband, defendant

---

[6] The consent judgment did not resolve the Lemons' counterclaims for trespass. Less than two months later, the parties entered a settlement, and the Lemons dismissed their trespass claims with prejudice.

4

Chad N. Hopkins and I used it to access our back 20 acres for access to take care of cattle.

Lemon filed a response, citing, among other things, an interrogatory answer in which he stated that, in September 2007, he "granted Chad permission to use the disputed property." Lemon also claimed that, on July 10, 2015, he posted a "No Trespassing – No Squatter's Rights or Adverse Possession" sign on or near the disputed property. And Lemon pointed to the consent judgment's reference to permissive use of the disputed property by both the Hopkinses and Grandparents.

The court granted summary judgment to the Hopkinses.[7] This appeal follows. Additional facts will be provided in the analysis, as necessary, to address Lemon's points on appeal.

**The Standard for Granting Summary Judgment and for Appellate Review**

Summary judgment is warranted where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Vescovo v. Kingsland*, 628 S.W.3d 645, 653 (Mo. App. W.D. 2020) (quoting *Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 842 (Mo. App. W.D. 2019)).

> The moving party establishes the right to judgment as a matter of law by demonstrating one of the following: (1) facts negating any one of the

---

[7] Although the court's judgment focused on Lemon's malicious prosecution claim, it is clear that the judgment also resolved Lemon's civil conspiracy claim because the Hopkinses moved for summary judgment on both claims and the court granted their motion in full. Moreover, "[t]he tort of civil conspiracy does not exist in its own right; '[r]ather, it acts to hold the conspirators jointly and severally liable for the underlying act.'" *Williams v. Bayer Corp.*, 541 S.W.3d 594, 612 (Mo. App. W.D. 2017) (quoting *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 22 (Mo. banc 2012)). "Therefore, if the 'tortious act[] alleged as [an] element[] of a civil conspiracy claim fail[s] . . . , then the conspiracy claim fails as well.'" *Id.* (quoting *W. Blue Print Co.*, 367 S.W.3d at 22).

claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the existence of one of the claimant's elements; or (3) facts necessary to support [movant's] properly pleaded affirmative defense.

*Id.* (quoting *Clark v. Ruark*, 529 S.W.3d 878, 881-82 (Mo. App. W.D. 2017)). To make this showing, the movant must attach to the motion for summary judgment a statement of uncontroverted material facts that "state[s] with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts." Rule 74.04(c)(1).[8] Even if uncontroverted, conclusory statements and legal conclusions "are not 'facts' for purposes of Rule 74.04, and cannot form the factual basis for summary judgment." *Metro. Nat'l Bank v. Commonwealth Land Title Ins. Co.*, 456 S.W.3d 61, 68 (Mo. App. S.D. 2015).[9]

"We review the grant of summary judgment *de novo.*" *Vescovo*, 628 S.W.3d at 653.

## Analysis

The elements of a malicious prosecution claim are:

(1) the commencement or prosecution of the proceedings against the present plaintiff; (2) its legal causation or instigation by the present defendant; (3) its termination in favor of the present plaintiff; (4) the

---

[8] All rule references are to the Rules of the Supreme Court of Missouri (2020).

[9] "Once the movant has established . . . [a prima facie] showing, the burden shifts to the non-movant, who must demonstrate 'that one or more of the material facts relied upon by the [moving] party is genuinely disputed.'" *Vescovo*, 628 S.W.3d at 653 (quoting *Impey v. Clithero*, 553 S.W.3d 344, 349 (Mo. App. W.D. 2018)).

absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage by reason thereof.

*Id*. at 654 (quoting *Impey*, 553 S.W.3d at 352). "'Actions for malicious prosecution are disfavored under Missouri law,' thus, 'strict and clear proof of all [ ] elements' is required." *Id.* (quoting *Impey*, 553 S.W.3d at 352-53). The motion court concluded that, as to the probable cause and malice elements of Lemon's malicious prosecution claim, there were no genuine issues of material fact and the Hopkinses were otherwise entitled to judgment as a matter of law.[10]

Lemon raises three points on appeal. First, he argues the motion court erred in granting summary judgment in that genuine issues of material fact exist as to whether the Hopkinses had probable cause to file the 2015 lawsuit because Lemon had previously given them permission to use the disputed property, thereby negating any claim for adverse possession. Second, Lemon asserts the court erred in granting summary judgment because, in doing so, the court relied on counsel's affidavit which was inadmissible. Third, Lemon claims the court erred in granting summary judgment because genuine issues of material fact exist as to whether the Hopkinses brought the 2015 lawsuit out of malice. For ease of discussion, we address Lemon's points out of order, beginning with Point II.

---

[10] The motion court concluded that Lemon had established the remaining four elements of his malicious prosecution claim: the Hopkinses' commencement of the 2015 lawsuit against Lemon, termination of the lawsuit in Lemon's favor, and damages.

## I. Counsel's affidavit in support of the Hopkinses' motion for summary judgment was admissible (Point II).

Lemon argues that the motion court erred by considering counsel's affidavit because it did not comply with Rule 74.04(e), was based on hearsay, and included impermissible legal opinions and, therefore, was inadmissible. Lemon moved to strike the Hopkinses' motion for summary judgment because it relied on counsel's affidavit. The court denied Lemon's motion to strike but ordered that all or part of nineteen statements in counsel's affidavit be stricken. The stricken statements pertained primarily to counsel's views on the ultimate legal issues: whether probable cause existed to file the 2015 lawsuit and whether the Hopkinses acted with malice in filing that lawsuit.

Rule 74.04(e) requires that affidavits "be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." "If an affidavit does not show a basis for personal knowledge, it is considered hearsay and is invalid"; a motion court cannot rely on hearsay to grant summary judgment. *May & May Trucking, L.L.C. v. Progressive Nw. Ins. Co.*, 429 S.W.3d 511, 515 (Mo. App. W.D. 2014).

Counsel's affidavit, as modified by the court, complies with Rule 74.04(e). The affidavit contains a declaration of personal knowledge.[11] The affidavit also stated that the affiant represented the Hopkinses in the 2015 lawsuit, a role that provides a further

---

[11] Counsel's affidavit stated the affiant is "a person over the age of 18 and competent to testify as to the matters contained herein, [and] all of the statements made herein are made from [affiant's] personal knowledge and are believed to be true and accurate."

basis for personal knowledge. *See id.* at 515 ("The basis for personal knowledge may . . . be gleaned from the role of the affiant as stated in the affidavit."). Affiant's role as the Hopkinses' counsel was sufficient to establish his personal knowledge of the facts underlying the 2015 lawsuit and his *belief* that, based on those facts, the Hopkinses had acquired the disputed property by adverse possession. Because counsel's affidavit, as modified by the court, demonstrated that the affiant was competent to testify to the matters stated therein based on his personal knowledge, counsel's affidavit was not hearsay and, thus, the affidavit was admissible, and the motion court did not err in considering it. Point II is denied.

**II.      There are genuine issues of material fact as to whether the Hopkinses had probable cause to initiate the 2015 lawsuit (Point I).**

"'Probable cause to instigate a civil suit' means a reasonable belief in the facts alleged plus a reasonable belief that the claim may be valid under the applicable law." *Vescovo*, 628 S.W.3d at 655 (quoting *Impey*, 553 S.W.3d at 353). "Probable cause is established '[i]f it appears that a reasonably prudent person would have believed and acted under the circumstances as did the person who instigated the previous action.'" *Id.* (quoting *Impey*, 553 S.W.3d at 353). "Because establishing the absence of probable cause requires proof of a negative, slight evidence is sufficient." *Id.* (quoting *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 319 (Mo. App. E.D. 2010).

As movants, the Hopkinses must show that Lemon "after an adequate period of discovery, has not been able to—and will not be able to—produce evidence sufficient to allow the trier of fact to find the [absence of probable cause]." *Vescovo*, 628 S.W.3d at

9

653 (quoting *Clark*, 529 S.W.3d at 881-82). In determining whether the Hopkinses met their burden, we are mindful of the elements of adverse possession: possession that is "(1) hostile, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous for a period of ten years." *Daniels-Kerr v. Crosby*, 484 S.W.3d 798, 802 (Mo. App. W.D. 2016) (quoting *Soderholm v. Nauman*, 466 S.W.3d 610, 619 (Mo. App. W.D. 2015)). "A claimant may tack his period of adverse possession on to that of his predecessors to meet the ten-year requirement." *Id.* (quoting *Nutting v. Reis*, 326 S.W.3d 127, 129 (Mo. App. S.D. 2010)).

In several numbered paragraphs of their statement of uncontroverted material facts, the Hopkinses claim they "believed" they were entitled to use the disputed property because they had acquired it by adverse possession. Their belief was based on the fact that they had used the disputed property for ingress and egress for more than ten years and the fact that Grandparents had used the disputed property in the same manner for decades, and thus the Hopkinses, could tack their period of adverse possession onto that of Grandparents to meet the ten-year requirement.[12] But the

_____

[12] The Hopkinses also claim that they relied on the advice of counsel in filing the 2015 lawsuit, but the only support they offer for that claim is a citation to their answer and affirmative defenses, wherein they listed advice of counsel as an affirmative defense. A movant "establishes the right to judgment as a matter of law by demonstrating . . . facts necessary to support his properly pleaded affirmative defense." *Vescovo*, 628 S.W.3d at 653 (quoting *Clark v. Ruark*, 529 S.W.3d 878, 881-82 (Mo. App. W.D. 2017)). Citation to pleadings alone does not demonstrate facts necessary to support summary judgment. *Lemay Place Condo. Ass'n v. Frank*, 633 S.W.3d 503, 507 (Mo. App. E.D. 2021). The defense of advice of counsel requires not only evidence that counsel provided such advice, but also "a showing that the defendant made a full and truthful disclosure of all material facts to his attorney prior to the filing of the [underlying] lawsuit." *Diehl v. Fred*

10

Hopkinses fail to "state[s] with particularity" any material facts supporting their belief. *See* Rule 74.04(c)(1). For example, there are no statements indicating that their long-standing use of the disputed property was open and notorious, exclusive, or hostile to Lemon's claim of ownership. The same is true with respect to Grandparents' use of the disputed property. In fact, there is nothing in the record indicating that Grandparents did not have permission from Lemon's predecessors to use the disputed property. And the Hopkinses' conclusory statements and legal conclusions that they believed they had acquired the disputed property by adverse possession "are not 'facts' for purposes of Rule 74.04, and cannot form the factual basis for summary judgment." *Metro. Nat'l Bank*, 456 S.W.3d at 68.

For his part, Lemon acknowledges that the Hopkinses believed they were entitled to use the disputed property, but he argues that is because he gave them permission to use it, and "[a] grant of permission is inconsistent with the hostility element of adverse possession." *Daniels-Kerr*, 484 S.W.3d at 802. Specifically, Lemon points to evidence that, in September 2007, he gave Chad permission to use the disputed property. Lemon also points to the ALA in which he granted the Hopkinses a temporary, nonexclusive license to use the disputed property for ingress and egress. In essence, Lemon points to facts related to conduct by the Hopkinses, after Lemon acquired his property in 2007, that

---

*Weber, Inc.*, 309 S.W.3d 309, 318 (Mo. App. E.D. 2010). There is no indication in the summary judgment record that the Hopkinses made the required disclosure to counsel before filing the 2015 lawsuit or that counsel provided such advice. Thus, there is no competent basis in the record to support a finding that the Hopkinses relied on counsel's advice in deciding to file suit.

11

he claims are inconsistent with the Hopkinses having previously acquired the disputed property by adverse possession. Lemon argues that these actions undercut the reliability of any uncontroverted facts put forward by the Hopkinses demonstrating they acquired an interest in the disputed property by adverse possession prior to 2007, and, therefore, it should be left to a jury to decide whether in 2015 the Hopkinses had probable cause to claim adverse possession. We need not decide whether uncontroverted facts demonstrating a reasonable belief that the disputed property was acquired by adverse possession prior to 2007 could be controverted by subsequent behavior inconsistent with adverse possession, because the Hopkinses failed to put forward uncontroverted facts supporting a finding of adverse possession prior to 2007.

The only evidence that the Hopkinses cite in support of their conclusory allegation—that they believed they acquired the disputed property by adverse possession because their period of adverse possession could be tacked onto Grandparents' use of the contested property to meet the ten-year requirement—is Stacie's affidavit stating that, for decades, Grandparents, the predecessors in interest to the Hopkinses' property, used the disputed property in the same manner that the Hopkinses used it. But this fact alone, even if uncontroverted, does not demonstrate that the possession was hostile, open and notorious, or exclusive, and thus does not demonstrate a reasonable belief that the disputed property was acquired by adverse possession. Even if the Hopkinses would be entitled to establish adverse possession based on Grandparents' use alone, it is controverted whether *the nature of Grandparents' use* supports adverse possession.

In his responsive uncontroverted facts, Lemon points to language in the consent judgment (entered based on an agreement between Lemon and the Hopkinses) stating, "The Hopkins[es]' claim for adverse possession is barred because [of] the Hopkins[es]' and *their predecessors-in-interest's permissive* use of the [d]isputed [p]roperty granted and given by the Lemons and their predecessors-in-interest." (Emphasis added.) Thus, whether Grandparents' use was hostile is a material fact in dispute.

Because the Hopkinses failed to demonstrate that there are no genuine issues of material fact as to whether they had probable cause to bring the 2015 lawsuit, summary judgment on the element of probable cause was inappropriate. Point I is granted.

### III. There are genuine issues of material fact as to whether the Hopkinses acted with malice in initiating the 2015 lawsuit (Point III).

"There are two malice standards in civil malicious prosecution actions: legal malice and malice in law." *Clark*, 529 S.W.3d at 882. Malice in law applies in cases, such as this, where a malicious prosecution claim is brought against non-attorneys. *Id.* "To show malice in law, a plaintiff must prove only that the underlying action was 'intentionally initiated or continued without the honest belief that it was lawful when done.'" *Id.* (quoting *King v. Young*, 304 S.W.3d 224, 227 (Mo. App. E.D. 2009)). "[M]alice in law can be inferred from facts that establish the lack of probable cause for filing the underlying action." *Id.* Conversely, when facts establish that "probable cause exists, the issue of malice becomes irrelevant because even if malice is clearly shown, the action for malicious prosecution must fail." *Zahorsky v. Griffin, Dysart, Taylor, Penner & Lay, P.C.*, 690 S.W.2d 144, 151 (Mo. App. W.D. 1985). The malice element is so

13

intertwined with the probable cause element that resolution of the latter typically determines resolution of the former. For that reason, Point III is granted.

As we stated earlier, the standard for malicious prosecution is high. "'[S]trict and clear proof of all [ ] elements' is required." *Vescovo*, 628 S.W.3d at 654 (quoting *Impey*, 553 S.W.3d at 253). But the issue presented here is not whether Lemon made a prima facie showing of malicious prosecution. Rather, the issue is whether the Hopkinses established that they were entitled to summary judgment on Lemon's claim. They did not.

### Conclusion

Because genuine issues of material fact remain as to whether the Hopkinses had probable cause to initiate the 2015 lawsuit and whether they acted with malice in doing so, summary judgment was inappropriate. We reverse and remand for further proceedings consistent with this judgment.[13]

_____
Karen King Mitchell, Judge

Alok Ahuja, Presiding Judge, and Edward R. Ardini, Jr., Judge, concur.

---

[13] The Hopkinses requested damages pursuant to Rule 84.19, which states, "If an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper." As evidenced by our reversal of summary judgment, we do not find Lemon's appeal frivolous. Thus, we decline to exercise our discretion to award Rule 84.19 damages in this case.